IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 2, 2007 Session

# CUMULUS BROADCASTING, INC.[1] ET AL. v. JAY W. SHIM ET AL.

**Appeal by permission from the Court of Appeals, Middle Section
Chancery Court for Davidson County
No. 01-3248-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2003-02593-SC-R11-CV - Filed on April 27, 2007**

---

The chancery court granted a motion for summary judgment to the Plaintiff on the theory of adverse possession under the common law. The Court of Appeals reversed and dismissed based upon Tennessee Code Annotated section 28-2-110 (2000), holding that there was a failure on the part of the Plaintiff to pay real estate taxes on the land area at issue. We granted permission to appeal in order to determine whether the chancellor erred by failing to address a motion to amend before ruling on the motion for summary judgment and also to consider whether the statutory bar applies in these circumstances. Although the chancellor erred by failing to grant the motion to amend before entering judgment, the error was harmless because the statutory bar to an adverse possession claim does not apply to contiguous tracts where the area of dispute is not substantial and each of the owners have paid taxes on their respective properties.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed;
Judgment of the Chancery Court Reinstated**

GARY R. WADE, J., delivered the opinion of the Court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER and CORNELIA A. CLARK, JJ. joined.

Douglas Ray Pierce and Jeremy Wayne Parham, Nashville, Tennessee, for the appellants, Phoenix of Hendersonville, Inc. and Cumulus Broadcasting, Inc.

James Carson Hofstetter, Nashville, Tennessee, for the appellee, Jay W. Shim.

**OPINION**

---

[1]Dickey Brothers Broadcasting Company, LLC ("Dickey Brothers") was the original Plaintiff. Later, Phoenix of Hendersonville, Inc. ("Phoenix") was added as a Plaintiff. Because there was a change of ownership during the litigation, the chancellor granted a motion by the Plaintiff to substitute Cumulus Broadcasting, Inc. ("Cumulus") for Dickey Brothers. Although the record makes several references to Dickey Brothers as Plaintiff, the Court of Appeals changed the style to identify the Plaintiff as Cumulus. This Court has done the same.

In 1966, James E. Charlton and wife, Mildred W. Charlton, the owners of approximately 21.75 acres located on Campbell Road in Goodlettsville, subdivided their property into two tracts. Later that year, the Charltons conveyed a 16.95 acre tract to Lawrence W. Johnson and wife, Elizabeth J. Johnson. A few months later, the Charltons sold by metes and bounds description their remaining 4.8 acre tract, which included their residence, to Charles H. James and wife, Frances O. James (the Shim Tract). After a series of transfers, the Defendant, Jay W. Shim ("the Defendant" or "Shim"), ultimately acquired title to the residence and property in 1994. An existing livestock fence was at or near the common boundary. Each of the two properties had frontage access along Campbell Road, a public road. On August 3, 1970, the Johnsons subdivided their property, conveyed by metes and bounds description 5.2 acres to Hendersonville Broadcasting Corporation, Inc. ("Hendersonville Broadcasting") (the Cumulus tract), and thereby reduced their remaining acreage to 11.75 (the Johnson tract). No reference was made to the fence. For purposes of clarity, a modified tax map identifying the Shim, Cumulus, and Johnson tracts appears below:



In 1971, Hendersonville Broadcasting built a 462 foot commercial radio station tower and transmitter on a hill on the Cumulus tract in order to operate radio station WQQK and, in 1974, constructed a twenty-foot-wide service road from Campbell Road to the Cumulus tract. The road, the only access to the tower, was located on the Johnson tract side of the livestock fence. As indicated, the fence generally traversed the common boundary with the Shim tract. The record indicates that the service road is within twenty to twenty-five feet of the Shim residence at its closest points.

Affidavits establish that the employees of Hendersonville Broadcasting and their successors in title have traveled the service road to the radio station tower and transmitter regularly since 1974.

Portions of the road were paved in 1978. Natural gas, electric, and telephone service have been provided to the Cumulus tract. These facts do not appear to be in dispute.

On June 21, 1982, the Cumulus tract was acquired by Phoenix, which, despite a subsequent transfer of the business to Dickey Brothers, was the record owner at the time of the litigation. The deed to Phoenix described a 5.2 acre tract with a twenty-foot service access road to Campbell Road, indicating the fence line as the common boundary with the Shim tract. The legal description was not quite the same as in the Johnson to Hendersonville Broadcasting conveyance, extending the boundary at various points within the service road to the fence line.[2] No changes were made to the Cumulus and Shim tax parcel as a result of the difference in the descriptions between the Johnson to Hendersonville Broadcasting conveyance and the Hendersonville Broadcasting to Phoenix conveyance. Thus, there was no additional assessment.

On November 20, 2000, some twenty-six years after the construction of the service road and six years after his purchase of the property, Shim, who by affidavit described the road as "an eyesore," had the boundaries of his property surveyed for the first time. The survey, the accuracy of which is not in dispute, indicated that portions of the Cumulus tract service road overlapped the boundary onto the Shim tract. In 2001, Shim, who was previously unaware "that a portion of the access road . . . was on my property," unilaterally removed the old livestock fence, bulldozed a portion of the service road, and built another fence along the lines of the new survey. This new enclosure obstructed the portion of the roadway encroaching upon the Shim tract, thereby blocking vehicle access to the tower and transmitter.

On October 19, 2001, Dickey Brothers, which had acquired Phoenix as a subsidiary in 1997 and continued to operate WQQK, filed suit in the Chancery Court of Davidson County seeking injunctive relief. The chancellor entered a temporary restraining order enjoining Shim from blocking access to the tower and transmitters. Subsequent amendments demanded damages for the claimed trespass by Shim and sought to quiet title to the disputed area. By order, Phoenix was added as a Plaintiff. Later, Lawrence W. Johnson and wife, Elizabeth J. Johnson, the original sellers of the two tracts, were added as Defendants. Shim filed a counterclaim for trespass and a third party complaint against James Bridges Dillehay, from whom he had acquired the property in 1994. Dillehay, in turn, filed a third party complaint against his predecessor in title, Tony S. Sloan, from whom he had acquired the property in 1987.

On April 30, 2003, the Plaintiff filed a motion for summary judgment. In response, Shim challenged the sufficiency of the evidence for a finding of adverse possession, questioned whether there was continuous usage between 1980 and 1982, and, among other things, argued that Tennessee Code Annotated section 28-2-110, which bars claims of adverse possession based upon non-payment of taxes, required dismissal. During the course of the litigation, Cumulus acquired the radio station. On May 23, 2003, a motion was filed by Dickey Brothers to substitute Cumulus as the lead Plaintiff.

---

[2]The affidavit of a Registered Land Surveyor suggests that "substantial changes in the methods and technologies" since 1966 explain the discrepancies.

Later, the chancellor granted the request. By June 4, 2003, the supporting affidavits had been filed by each side to the controversy. On the following day, the Plaintiff filed a motion to amend to add two alternative theories of relief: (1) defensive adverse possession under Tennessee Code Annotated sections 28-2-102 and 103; and (2) an easement by prescription in the service road area. The Defendant objected to the motion to amend.

By order on June 23, 2003, the chancellor granted the Plaintiff summary judgment based upon common law adverse possession of the service road area but denied summary judgment based upon Tennessee Code Annotated sections 28-2-101 through 103, the first of the two grounds asserted in the motion to amend, because there were "genuine issues of material fact as to whether that theory [was] being asserted defensively," as set out in 28-2-102 and 103, and also issues of fact as to 28-2-101, whether the adverse possession "with color of title was in good faith." The chancellor rejected the Defendant's claim that Tennessee Code Annotated section 28-2-110 was a bar to the Plaintiff's claim. The third party complaints against Dillehay and Sloan were dismissed. While having addressed one of the two claims in the order granting summary judgment, the chancellor made no reference to that portion of the motion seeking to amend on the alternative theory of easement by prescription. The issue of damages was not addressed and is not a subject of this appeal.

On June 27, 2003, four days after the chancellor's ruling, the Plaintiff Cumulus and the Defendants Lawrence W. Johnson and wife, Elizabeth J. Johnson, entered into an agreed judgment establishing a common boundary line as indicated by the 1970 recorded deed from the Johnsons to Hendersonville Broadcasting. Within days thereafter, Shim gave notice of voluntary dismissal of his counterclaim but also filed a motion to alter or amend the judgment, contending that the affidavits filed by the Plaintiff failed to establish continuous adverse possession under the common law for the requisite period of twenty years. On September 10, 2003, the chancellor entered a memorandum and order denying the motion, specifically finding that unrefuted circumstantial evidence established adverse use between 1980 and 1982.

On appeal, Shim again challenged whether the Plaintiff had established adverse and continuous use and possession, questioned the propriety of late filed affidavits, argued for dismissal under Tennessee Code Annotated section 28-2-110, and asked for a summary judgment as the non-moving party. The Court of Appeals reversed the chancellor's ruling, concluding that the failure on the part of Cumulus and its predecessors in title to pay real property taxes on those small portions of the service road within the Shim tract as defined by the 2000 survey, as required by Tennessee Code Annotated section 28-2-110(a), was fatal to the claim. Because of its reliance on this statutory bar, the Court of Appeals did not address the evidentiary basis for the chancellor's finding in the body of the opinion but by footnote did observe that "the undisputed evidence supports . . . the conclusion that Cumulus was [otherwise] entitled to a judgment on its adverse possession as a matter of law." By virtue of the ruling, the chancellor was instructed to enter summary judgment for Shim and to dismiss the complaint.

The Plaintiff filed a petition to rehear asking the Court of Appeals to remand the case for further proceedings so as to allow the chancellor to consider the alternative grounds for recovery,

-4-

especially the claim for easement by prescription, as described in its motion to amend. The Court of Appeals denied the petition on the basis that the chancellor had never granted the Plaintiff's amendment before ruling on the adverse possession claim.

This Court granted review under Rule 11 of the Tennessee Rules of Appellate Procedure to consider (1) whether a summary judgment is appropriate when a motion to amend on an alternative ground is pending; and (2) whether Tennessee Code Annotated section 28-2-110(a), which requires payment of real property taxes for a claim of adverse possession, bars recovery when the boundary of adjoining properties is at issue.

## Standard of Review

The standard for review of a grant of summary judgment by the trial court is, of course, de novo. See Blair v. W. Town Mall, 130 S.W.3d 761, 763 (Tenn. 2004). Because the question is one of law, no presumption of correctness attaches to the grant of a summary judgment. Hembree v. State, 925 S.W.2d 513, 515 (Tenn. 1996). A summary judgment, when based upon a statement of undisputed facts, pleadings, depositions, answers to interrogatories, admissions, and affidavits, is appropriate only when (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) based on the undisputed facts, the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; Blair, 130 S.W.3d at 764. Further, the appellate courts "must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993).

In supporting a motion for summary judgment, the moving party must do more than merely proffer "'conclusory assertion[s] that the non-moving party has no evidence.'" McCarley v. W. Quality Food Serv., 960 S.W.2d 585, 588 (Tenn. 1998) (quoting Byrd, 847 S.W.2d at 215). Rather, the movant "must either affirmatively negate an essential element of the non-movant's claim or conclusively establish an affirmative defense." Id. If the moving party fails to negate an essential element, the non-moving party's burden of producing evidence of a material dispute of fact is not triggered. Id. In our examination of the facts, we must determine whether any disputes in the evidence exist and, if so, whether they are material to a claim or a defense. Byrd, 847 S.W.2d at 214.

Further, summary judgment may be granted in favor of the non-moving party, although this Court has cautioned that such a grant "should be taken only in rare cases and with meticulous care." Thomas v. Transp. Ins. Co., 532 S.W.2d 263, 266 (Tenn. 1976). Generally, the non-moving party should prevail only when "the requirements of Rule 56 are met and no prejudice is shown to the original movant." March Group, Inc. v. Bellar, 908 S.W.2d 956, 959 (Tenn. Ct. App. 1995).

## Motion to Amend

Our first consideration is whether the chancellor erred by failing to rule on the Plaintiff's motion to amend before granting summary judgment and, if so, whether the Court of Appeals erred by failing to remand on this issue.

The grant or denial of a motion to amend a pleading is discretionary with the trial court. Harris v. St. Mary's Med. Ctr., Inc., 726 S.W.2d 902, 904 (Tenn. 1987). Generally, trial courts must give the proponent of a motion to amend a full chance to be heard on the motion and must consider the motion in light of the amendment policy embodied in Rule 15.01 of the Tennessee Rules of Civil Procedure that amendments must be freely allowed; and, in the event the motion to amend is denied, the trial court must give a reasoned explanation for its action. Henderson v. Bush Bros. & Co., 868 S.W.2d 236, 238 (Tenn. Workers' Comp. Panel 1993). Although permission to amend should be liberally granted, the decision "will not be reversed unless abuse of discretion has been shown." Welch v. Thuan, 882 S.W.2d 792, 793 (Tenn. Ct. App. 1994). Factors the trial court should consider when deciding whether to allow amendments include "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Merriman v. Smith, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979).

In Branch v. Warren, 527 S.W.2d 89 (Tenn. 1975), we discussed the effect of Rule 15.01 of the Tennessee Rules of Civil Procedure:

> The new Rules of Civil Procedure, in this regard "come not to destroy the old law, but to fulfill." They were designed to simplify and ease the burden of procedure under the sometimes harsh and technical rules of common law pleading. Accordingly, Rule 15.01 provides that leave (to amend) shall be freely given when justice so requires. This proviso in the rules substantially lessens the exercise of pre-trial discretion on the part of a trial judge. Indeed, the statute (§ 20-1505, T.C.A.) which conferred a measure of discretion on trial judges was repealed and Rule 15 stands in its place and stead. That rule needs no construction; it means precisely what is says, that "leave shall be freely given."

Id. at 91-92 (emphasis added). Later, in Gardiner v. Word, 731 S.W.2d 889, 891 (Tenn. 1987), this Court confirmed that Branch required trial courts to be liberal in allowing pretrial motions to amend. See, e.g., Craven v. Lawson, 534 S.W.2d 653, 655 (Tenn. 1976); Walden v. Wylie, 645 S.W.2d 247, 250 (Tenn. Ct. App. 1982); Douglass v. Rowland, 540 S.W.2d 252, 256 (Tenn. Ct. App. 1976); see also Merriman, 599 S.W.2d at 559; cf. Liberty Mut. Ins. Co. v. Taylor, 590 S.W.2d 920, 921 (Tenn. 1979).

Although not binding, federal decisions are often helpful in the interpretation of court rules. Rule 15(a) of the Federal Rules of Civil Procedure is almost identical to Rule 15.01 of the Tennessee Rules of Civil Procedure. Pertinent to the issue under review is that a number of federal cases have disapproved of ruling on the merits while a motion to amend is pending. Thompson v. Superior

Fireplace Co., 931 F.2d 372, 374 (6th Cir. 1991); Ellison v. Ford Motor Co., 847 F.2d 297, 300 (6th Cir. 1988). Some decisions state that a failure to consider a motion to amend, under most circumstances, qualifies as an abuse of discretion. See, e.g., Samuel H. Esterkyn, M.D., Inc. Pension Sharing & Profit Sharing Plan v. Van Hedge Fund Advisors, Inc., 108 F. Supp. 2d 876, 881 (M.D. Tenn. 1999).

In Henderson, the lead case on the issue in this state, we set aside a summary judgment, concluding that the trial court had abused its discretion by disallowing a motion to amend as "too late." 868 S.W.2d at 238. In the instant case, the chancellor did address the motion to amend filed by the Plaintiffs to the extent that it ruled that one alternative ground, a theory of statutory adverse possession, did not apply; the chancellor did not, however, consider the other claim that the Plaintiff had acquired an easement by prescription based upon twenty years or more of adverse use. Although the Plaintiff initially prevailed on the merits of the claim under the theory of adverse possession and the easement claim was at least temporarily of no consequence, the amendment should have been considered, in our view. Because of our analysis on the remaining issue, however, the error can be classified as harmless under Rule 36(b) of the Tennessee Rules of Appellate Procedure. We find that the error was not prejudicial to either the substantive rights of the party or the judicial process.

**Adverse Possession and Prescriptive Easement**

The primary claim of Cumulus is based upon twenty or more years of exclusive possession of the property on its side of the livestock fence which included the entirety of a service road, estimated at twenty feet in width. While the Defendant admittedly made no prior claim to any portion of the access road, it is his position that the new survey accurately depicted his boundary as crossing over the fence line and into the roadway at certain points and that because there were no changes to the tax map, the Plaintiff could not have paid any assessment on any portion of the area in dispute.

The doctrine of adverse possession is often described as a limitation on the recovery of real property; the limitation period may operate not only as a bar to recover adversely possessed property but it may also vest the adverse holder with title. Ralph E. Boyer, Survey of the Law of Property 233, 236 (3d ed. 1981). Generally, acquisition by adverse possession for the requisite period of time, whether statutory or under common law, must be (a) actual and exclusive; (b) open, visible, and notorious; (c) continuous and peaceable; and (d) hostile and adverse. Id. The adverse possession of real estate is not only inconsistent with the right of the title holder but may, when all elements of the doctrine are present, create an actual ownership interest. 10 Thompson on Real Property § 87.01, at 73-74 (David A. Thomas ed., 1994).

Historically, there are several policy reasons used to justify adverse possession, such as: (1) the stabilization of uncertain boundaries through the passage of time; (2) a respect for the apparent ownership of the adverse possessor who transfers his interest; and (3) assurance of the long-term productivity of the land. Title by either possession or prescription are old subjects in the English Law, according to one treatise, with counterparts in the Roman Law. Boyer, Survey of the Law of

Property 764; see Taylor ex dem. Atkyns v. Hord, 1 Burr. 60, 97 Eng. Rep. 190 (K.B. 1757); see also Freeman v. Martin Robowash, Inc., 457 S.W.2d 606, 609-10 (Tenn. Ct. App. 1970).

As indicated, limitations of real property actions, i.e., the statutory forms of adverse possession, are found in Tennessee Code Annotated sections 28-2-101 through 103. Initially, land granted by the state, for example, requires only a period of seven years' adverse possession under a recorded assurance or color of title,[3] terms which are used interchangeably. Tenn. Code Ann. § 28-2-101 (2000); see, e.g., Slatton v. Tenn. Coal, Iron, & R.R. Co., 75 S.W. 926, 927 (Tenn. 1902). Another provision, Tennessee Code Annotated section 28-2-105, does not require any proof of a state land grant but does prescribe assurance of title for thirty years and a minimum of seven years of adverse possession. The limitations on actions statutes, described in Tennessee Code Annotated sections 28-2-102 and 103, are defensive only, barring only the remedy. Kittel v. Steger, 117 S.W. 500, 503 (Tenn. 1909). These rights may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner. Savely v. Bridges, 418 S.W.2d 472, 479 (Tenn. Ct. App. 1967). Tennessee Code Annotated section 28-2-102 provides a defense when there is assurance of title and seven years possession; this statute serves as protection as to the entire boundary as described. Section 28-2-103, which does not involve color of title, protects an adverse holder after a period of seven years but only as to that portion of the land in his actual possession. Shearer v. Vandergriff, 661 S.W.2d 680, 682 (Tenn. 1983).[4]

None of these statutory grounds limiting actions on the recovery of property are at issue in the appeal of this case. Instead, the Plaintiff relies upon adverse possession under common law, an alternative method for the application of the doctrine. In our state, common law adverse possession rests upon the proposition "that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed." Ferguson v. Prince, 190 S.W. 548, 552 (Tenn. 1916); see also Webb v. Harris, 315 S.W.2d 274, 277 (Tenn. Ct. App. 1958). Color (or assurance) of title is not required. Keel v. Sutton, 219 S.W. 351, 352-53 (Tenn. 1920); Hallmark v. Tidwell, 849 S.W.2d 787, 792-93 (Tenn. Ct. App. 1992). In order to establish adverse possession under this theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. Hightower v. Pendergrass, 662 S.W.2d 932, 935 n.2 (Tenn. 1983); cf. Menefee v. Davidson County, 260 S.W.2d 283, 285 (Tenn. 1953). Adverse possession is, of course, a question of fact. Wilson v. Price, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing. O'Brien v. Waggoner, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936). The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. Kirkman v. Brown, 27 S.W. 709, 710 (Tenn. 1894). When an adverse possessor holds the land

_____

[3]"'Color of title' is something in writing which at face value, professes to pass title but which does not do it, either for want of title in the person making it or from the defective mode of the conveyance that is used." 10 Thompson on Real Property § 87.12, at 145.

[4]Tennessee Code Annotated section 28-2-104 provides that its preceding statutes do not apply to lands reserved for schools.

for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor. Cooke v. Smith, 721 S.W.2d 251, 255-56 (Tenn. Ct. App. 1986).

Successive possessions, or tacking, may be utilized to establish the requisite period of years if there is no hiatus. Ferguson, 190 S.W. at 552;[5] Catlett v. Whaley, 731 S.W.2d 544, 545-46 (Tenn. Ct. App. 1987). What is required for tacking is that "the adverse possessor intended to and actually did turn over possession of . . . [the] land." 10 Thompson on Real Property § 87.14, at 178; see also Derryberry v. Ledford, 506 S.W.2d 152, 156 (Tenn. Ct. App. 1973). As to this issue, intent may be established by "parol evidence or implied from circumstances." Peoples v. Hagaman, 215 S.W.2d 827, 831 (Tenn. Ct. App. 1948). Typically, fencing is an indicia of ownership. Bensdorff v. Uihlein, 177 S.W. 481, 482 (Tenn. 1915). "The possession, use, and dominion may be as absolute and exclusive where there is no dispute as to boundary, and hence the occupant has no actual intention to claim adversely to anyone, as where such an intention exists." Gibson v. Shular, 194 S.W.2d 865, 867 (Tenn. Ct. App. 1946). Prior to Gibson, there was a split of authority as to whether adverse possession by mistake precluded application of the doctrine.

In Erck v. Church, 11 S.W. 794, 795-96 (Tenn. 1889), an adverse possessor, who was mistaken as to the real boundary, built a fence some fifty feet onto the property of a neighbor. Although this Court held in favor of the owner because of a failure to establish seven years of continuous use, this Court recognized that the possession otherwise qualified as adverse. In Williams v. Hewitt, 164 S.W. 1198, 1199 (Tenn. 1914), this Court followed Erck, ruling that possession, even if accidental or unintentional, could indeed be adverse. In Buchanan v. Nixon, 43 S.W.2d 380, 380-81 (Tenn. 1931), the title owner's tenant built a fence just inside the actual boundary. Afterward, the owner of the neighboring property constructed a wall at the fence line, encroaching by several inches. Neither of the two owners knew of the encroachment. As a defense, the title holder successfully argued that the neighbor, who had the burden of proof and was ignorant of the actual boundary until a subsequent survey, lacked the requisite intent to hold adversely for the requisite seven years under the statute.

Over sixty years ago, however, the Court of Appeals, while recognizing the holding in Buchanan in the context of conflicting authorities, cited the "proper rule" and expressed preference for a standard quoted in the American Law Reports:

> [I]n the absence of positive proof or unambiguous circumstances showing that a possession is or is not adverse, the exclusive possession and use of the land are presumed to be adverse, it is not necessary to show an intention to hold and claim the property in spite of the fact that the legal title may be in another. The possession of one who holds property as his own is adverse to all the world, although he never heard of an adverse claim. . . . The fact that the occupant might, if he knew that he

---

[5] In Erck v. Church, 11 S.W. 794, 797 (Tenn. 1889), this Court held that a defensive adverse possession claim under Tennessee Code Annotated section 28-2-103 does require contractual privity in the event of successive possessions. Under that section, "successive possessions appearing, and nothing more, will not constitute privity."

was on his neighbor's land, recognize and accede to the latter's title, does not affect the adverse character of his possession, where, <u>because there has never been any question or doubt as to the location of the boundary, he possesses and uses the property as his own</u>, and does not recognize or accede to any superior title.

<u>Gibson</u>, 194 S.W.2d at 866-67 (quoting Annotation, <u>Possession in Ignorance of , or Under Mistake as to, Boundary Line as Adverse</u>, 80 A.L.R. 155, 157 (1932) (superceded by <u>Adverse Possession Due to Ignorance or Mistake as to Boundaries</u>, 97 A.L.R. 14 (1935)) (emphasis added).

This view has prevailed in recent cases. Thus, a mistake in the property line does not make possession something other than adverse. <u>Peoples</u>, 215 S.W.2d at 829. A similar observation was made in <u>Liberto v. Steele</u>, 221 S.W.2d 701, 703-04 (Tenn. 1949). In that case, this Court specifically held that mistakes as to the true boundary did not preclude a finding of adverse possession. Moreover, in <u>Lemm v. Adams</u>, 955 S.W.2d 70, 72 (Tenn. Ct. App. 1997), the Court of Appeals confirmed that actual intent to possess adversely is not a prerequisite to a finding of adverse possession. All of these cases are relevant to the issue before us.[6]

A doctrine related to adverse possession is that of prescriptive easement, a subject of the Plaintiff's motion to amend. Generally, this easement arises when a use, as distinguished from possession, is adverse rather than permissive, open and notorious, continuous and without interruption, and for the requisite period of prescription. Boyer, <u>Survey of the Law of Property</u> 569-70. The extent of the rights matured by prescription is based upon the extent of the use during the period of prescription. <u>Id.</u>

Most authorities describe the doctrine of adverse possession and that of prescriptive easement as "blended" but with differing histories; the primary distinction is that the adverse possessor <u>occupied</u> the land of another, whereas, in prescription, there is merely adverse <u>use</u> of the land of another. <u>See</u> William B. Stoebuck, <u>The Fiction of Presumed Grant</u>, 15 Kan. L. Rev. 17 (1966); Roger A. Cunningham, William B. Stoebuck, & Dale A. Whitman, <u>The Law of Property</u> § 8.7, at 451 (1984). A prescriptive easement is not ownership and the right acquired is limited to the specific use. <u>Bradley v. McLeod</u>, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998).

In order to establish prescriptive easement under the common law of this state, the usage must be adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. <u>Id.</u> at 935; <u>see</u> <u>Pevear v. Hunt</u>, 924 S.W.2d 114, 116 (Tenn. Ct. App. 1996); <u>House v. Close</u>, 346 S.W.2d 445, 447 (Tenn. Ct. App. 1961). The requisite period of time of continuous use and enjoyment for a prescriptive easement is twenty years. <u>Bradley</u>, 984 S.W.2d at 935; <u>Pevear</u>, 924 S.W.2d at 116; <u>Town of Benton v. Peoples Bank of Polk County</u>, 904 S.W.2d 598,

---

[6]<u>Michael v. Jakes</u>, No. M1999-02257-COA-R3-CV, 2002 WL 1484448 (Tenn. Ct. App., July 12, 2002), contains an excellent discussion of adverse possession in Tennessee.

602 (Tenn. Ct. App. 1995). Although unnecessary to the resolution of the case at issue, the undisputed facts would appear to be supportive of a claim of easement by prescription.

## Contiguous Properties and the Statutory Bar

Tennessee Code Annotated section 28-2-110(a) was enacted to facilitate the collection of property taxes by requiring persons claiming an interest in real property to have that interest assessed and to pay the taxes thereon. Burress v. Woodward, 665 S.W.2d 707, 709 (Tenn. 1984). The statute, made a part of the chapter pertaining to limitations on real actions, provides as follows:

> Action barred by non payment of taxes. - (a) Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

Tenn. Code Ann. § 28-2-110(a) (2000).

Freddie Stroup, Supervisor of the Mapping Division of the Metro Planning Agency in Davidson County, provided an affidavit for the Defendant. After reading the deed descriptions and comparing them with the tax maps, he concluded that the "area of overlap . . . has always been assessed as a part of the Shim tract."

Because the Plaintiff had not paid taxes on the "slight" overlap between the earlier deed description from the Johnsons to Hendersonville Broadcasting and the fence line, the Court of Appeals sided with the Defendant, ruling that this statute was a bar to the claim. While ordering dismissal of the suit and acknowledging "harsh results" by the application of the statute, the Court of Appeals relied upon Burress, 665 S.W.2d at 709, for its decision but also observed that the statute merely barred the suit by the Plaintiff and did not "affect title or destroy rights, require ejection of the occupier or possessor of the property, or prevent the owner or occupier of the property from defending . . . title and possession."

In Burress, 665 S.W.2d at 708, the representative of an estate attempted to exercise a reservation of mineral rights by the decedent after a grant to the purchaser some thirty-six years earlier. The decedent had not paid taxes on the mineral rights for over twenty years. This Court ruled that Tennessee Code Annotated section 28-2-110 placed the burden on the property owner to have it assessed. In Burress, this Court cited with approval the holding in Alexander v. Patrick, 656 S.W.2d 376, 377 (Tenn. Ct. App. 1983): "T.C.A. § 28-2-110 acts as an absolute bar to any suit 'where one claiming an interest in real property or his predecessor in title has failed to have assessed and to pay taxes on the claimed property for at least twenty continuous years.'" Burress, 665 S.W.2d at 709. In Alexander, the claimant asserted ownership of a fifty acre tract based upon a 1902 deed

to her father, E. Mulry, but never paid real estate taxes. Patrick claimed the same property, having acquired a deed from the clerk and master whose predecessors in title, in 1911, also received a deed from Mulry. Patrick's predecessors in title paid taxes beginning in 1912. While these two cases accurately apply the statutory bar, they are distinguishable on the facts. They do not involve adjacent properties with a common boundary, the specific location of which was unknown to the respective owners until ascertained by survey.

In its ruling in the instant case, the Court of Appeals specifically disapproved of the chancellor's interpretation of Winborn v. Alexander, 279 S.W.2d 718 (Tenn. Ct. App. 1954), and determined that a failure to pay taxes is a bar even when the area of dispute has been considered as a part of a larger parcel in which the taxes have been paid. In Winborn, having facts more closely aligned with those at issue, the owners of adjacent properties disputed the location of their common boundary, calling into question the ownership of a relatively small area in the context of the properties in each tract. The court ruled that Winborn was the rightful owner of the property and concluded that Tennessee Code Annotated section 28-2-110[7] did not bar the claim:

> In our opinion, this [statutory defense] does not apply to the case . . . because it does not appear that complainants failed to pay any taxes on their property, and they were claiming the disputed strip as a portion of their homeplace and not as a separate lot or parcel of land. Further, we do not think this Section would bar complainants' action because it does not appear that complainants or those through whom they claimed, failed to pay taxes for the prescribed twenty-year period.

Id. at 729 (emphasis added).

The first sentence of the quotation has caused conflicting interpretations. One view is that the ruling created a "contiguous property exception" or "homeplace exemption" to the statute, wherein the failure to pay real estate taxes is not a bar if the area of dispute is believed to be a part of the main parcel on which the claimant has paid taxes and the dispute does not pertain to a separate tract. The second interpretation, that approved by the Court of Appeals in this instance, has been that Winborn did not establish a "contiguous property exception" and that the defense in Winborn had simply failed to meet its burden of proving that the adverse holder had not paid the taxes on the disputed area.

Recently, the issue was addressed in Jack v. Dillehay, 194 S.W.3d 441 (Tenn. Ct. App. 2005). In Jack, a different section of the Court of Appeals, also concluding that Winborn had not established a contiguous property or homestead exemption, applied the following standard: "[T]he consideration as to whether disputed property constitutes a portion of a litigant's homestead is merely a factor courts may consider in determining the payment of taxes when other evidence, such as tax records, fail[s] to preponderate upon such issue." Id. at 454. The court concluded that when there was no way to determine from the record the actual property included in the assessment, it was

---

[7]Williams Code section 9159.1

unlikely that the defendant could meet the burden of proof to invoke the statutory bar. Id. Of importance is the fact that the area of dispute in Jack consisted of a larger, identifiable area – some thirty-two acres. In that case, therefore, the Court of Appeals concluded that the defendant had clearly met his burden of proving that the claimant had not paid taxes on the disputed tract for a period of twenty years.

The decision in Jack is also distinguishable from this case on its facts. Winborn is more applicable to the circumstances of this case and, in our view, represents a better rule where the area of dispute upon a claim of adverse possession is relatively minor. Our interpretation of Winborn differs from that of the Court of Appeals. Initially, a boundary line between parties is established by the intent of the parties, either expressed or implied. George Chamberlin, Cause of Action to Enforce Agreement Between Adjoining Landowners as to Location of Boundary Line, 27 Causes of Action 615, § 6 (1992 & Supp. 2006). A tax map is permissible in a boundary dispute to confirm the payment of taxes but is not particularly helpful for the purpose of establishing a boundary line. Whitworth v. Hutchison, 731 S.W.2d 915, 917 (Tenn. Ct. App. 1986). Courts of other states generally subscribe to the same rule. See, e.g., Bull v. Pinkham Eng'g Assocs., Inc., 752 A.2d 26, 32 (Vt. 2000). Thus, "plats from a county assessor's office are admissible [only] for the purposes of determining who paid taxes on a particular piece of real property." Jack, 194 S.W.3d at 450. As the testimony in Jack established,

> the particular number of acres in a particular tax parcel as shown on the tax maps, do not control the question of exactly what real property is being assessed, since those acreage figures are taken directly from instruments of conveyance containing legal descriptions of real property which can be, and frequently are in rural counties such as Hickman County, materially inaccurate.

Id. at 451.

Because tax maps are for the purpose of showing the plats upon which parties have paid taxes rather than establishing boundaries, Whitworth, 731 S.W.2d at 917, a "slight overlap" would rarely have any effect on an evaluation for tax purposes. Tennessee Code Annotated section 28-2-110[8] was enacted in order to facilitate the collection of property taxes based upon property evaluations. The burden of proof requires any party who relies upon the invocation of Tennessee Code Annotated section 28-2-110 to clearly establish the failure to pay taxes by the other party. See Bone v. Loggins, 652 S.W.2d 758, 761 (Tenn. Ct. App. 1982). Because tax maps do not identify precise boundaries and actual boundaries are established by intent, the Defendant Shim cannot prevail. Tennessee Code Annotated section 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes. To hold otherwise would effectively eliminate the adverse possession of any part of an adjoining tract. As a matter of policy, possession of property for twenty or more years, accompanied by all other elements of the doctrine, is a basis for ownership.

---

[8]Enacted on February 19, 1947, ch. 28, § 3, 1947 Tenn. Pub. Acts 179-81.

-13-

Boundary disputes, or claims of adverse possession or prescriptive easement in association with a boundary dispute, are rarely appropriate for summary judgment. Typically, there are genuine factual issues. In this unusual instance, however, the material facts are not in dispute. Both the chancellor and the Court of Appeals have so determined. The single question is the applicability of the statutory bar. Hendersonville Broadcasting and its successors, including the Plaintiff, have exercised exclusive, actual, adverse, continuous, and open and notorious possession, by the legal definitions of those terms, of the actual area making up the service road for more than twenty years. By all appearances, both the Plaintiff and the Defendant paid taxes on their separate tracts throughout their intervals of ownership. That the Plaintiff and the Defendant, and their predecessors in title, were mistaken as to the true boundary is of no consequence.

The judgment of the Court of Appeals is therefore reversed, and the judgment of the Chancery Court of Davidson County is reinstated. Costs of this appeal are adjudged one half against the Appellant Cumulus and one half against the Appellee Shim and the sureties for the parties, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE

-14-