# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
NOVEMBER 17, 2009 Session

## MELVIN QUARLES, ET AL. v. BARBARA ATKINS SMITH, ET AL.

### Direct Appeal from the Chancery Court for Fayette County
#### No. 14332    William C. Cole, Chancellor

---

### No. W2009-00514-COA-R3-CV - Filed February 24, 2010

---

This case involves a boundary line dispute. Plaintiffs brought suit to enjoin Defendant Walker from entering property they claimed to own. However, Defendant Walker filed a counter-claim against Plaintiffs asserting, among other things, ownership by adverse possession. The trial court found that title to the disputed property had vested in Defendant Walker, and therefore, it granted summary judgment in his favor. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S.,, delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

James Stephen King, Memphis, Tennessee, for the appellants, Melvin Quarles, Charlotte Quarles, Glen Hayden and Cheryl Hayden

Thomas D. Forrester, Covington, Tennessee, for the appellee, June Walker, Jr., a/k/a J. G. Walker, Jr.

# OPINION

## I. FACTS & PROCEDURAL HISTORY

June Walker, Jr. ("Defendant Walker") obtained ownership of two tracts of land in Fayette County, Tennessee, encompassing approximately 92.64 acres,[1] on December 8, 1948, by Trustee's Deed from his parents, Mr. and Mrs. J.G. Walker. On October 7, 2003, Melvin Quarles, Charlotte Quarles, Glen Hayden, and Cheryl Hayden ("Plaintiffs") purchased, from Barbara Atkins Smith ("Defendant Smith"), land located in Fayette County, Tennessee, which adjoins land owned by Defendant Walker. The boundary line between Plaintiffs' land and Defendant Walker's land is in dispute. Both parties claim title to a partially wooded and partially open field fourteen-acre tract bordered by Defendant Walker's undisputed property to the west and Plaintiffs' undisputed property to the east. A boundary survey shows a fence line marked "A" bordering the eastern edge of the disputed property and a fence line marked "B" partially bordering the disputed property's western edge.

In his affidavit, Mr. Quarles claims that after purchasing the land from Defendant Smith, he began to plant grass seeds when "[t]he reading on the planter's acreage counter made me suspicious that the property did not contain the 78 acres that I thought we were purchasing." Therefore, he had the property surveyed by Jack McAdoo in November 2005. After comparing the deed descriptions of both Plaintiffs' deed and Defendant Walker's deed, Mr. McAdoo determined that the deed descriptions do not overlap, and that the disputed fourteen-acre tract is included within Plaintiffs' deed. Thus, Mr. McAdoo found that the "A" fence line was not the property boundary, but that Plaintiffs' property extended west of that line.

Thus, in December 2006, Plaintiffs filed suit against Defendant Smith for breach of warranty of title and breach of contract, and they sued Defendant Walker seeking to establish the boundary line of their adjoining properties and seeking an injunction to prevent Defendant Walker from entering the disputed property. In response, Defendant Walker pled several affirmative defenses, including Tennessee Code Annotated section 28-2-109[2] and

---

[1] The 1948 recording instrument states that 92.64 acres were conveyed to Defendant Walker. However, a 1983 tax map lists the property at 102 acres.

[2] Tennessee Code Annotated section 28-2-109 states:

> Any person holding any real estate or land of any kind, or any legal or equitable interest therein, who has paid, or who and those through whom such person claims have paid, the state and county taxes on the same for more then twenty (20) years continuously prior to the

(continued...)

adverse possession pursuant to Tennessee Code Annotated section 28-2-103. Defendant Walker also asserted a counter-claim against Plaintiffs, claiming title to the disputed property through the payment of property taxes since 1948, or, alternatively, through adverse possession or prescription, and asserting Tennessee Code Annotated section 28-2-103 as a defense to ejectment.

Defendant Walker filed a motion for summary judgment regarding his counter-claim against Plaintiffs, claiming it was "without dispute" that he had adversely possessed the disputed property since 1948. In support of his motion for summary judgment, Defendant Walker filed a "Statement of Undisputed Material Facts" on April 29, 2008,[3] which provides in part:

> Walker has openly, adversely and exclusively possessed and occupied to the exclusion of all others the disputed property . . . since he acquired ownership in 1948.

> Walker's parents exclusively possessed and occupied Walker[']s property including the property in dispute to the exclusion of all others prior thereto.

> Since 1948 Walker has exclusively used, possessed and occupied the disputed property in his farming/cattle business.

> The fence line indicated by the letter "A" on the Jack A. McAdoo survey is the recognized boundary line between Walker and Plaintiffs['] predecessors in title since 1948 and was the recognized boundary line prior to 1948 by and between Walker's parents and the Plaintiffs['] predecessors in title.

> The fence line indicated by letter "A" on the boundary survey of Jack McAdoo

---

[2](...continued)
date when any question arises in any of the courts of this state concerning the same, and who has had or who and those through whom such person claims have had, such person's deed, conveyance, grant or other assurance of title recorded in the register's office of the county in which the land lies, for such period of more than twenty (20) years, shall be presumed prima facie to be the legal owner of such land.

[3]Defendant Walker's "Statement of Undisputed Facts" relied upon the Affidavits of Defendant Walker and Assessor of Property Mark A. Ward, as well as the depositions of Charles Quarles and Defendant Smith.

has been maintained as a boundary line fence by Walker and Plaintiffs['] predecessors in title including Charlie Quarles, Plaintiffs' father/father-in-law who leased the property from Plaintiffs['] predecessors in title for many years[.]

The fence indicated by the letter "B" on the survey of Jack McAdoo along the southwest portion of the disputed property indicated by an "old tree with fence" was a part of an internal fence constructed and maintained by Walker in his cattle operation and was never recognized by Walker or Plaintiffs['] predecessors in title as a boundary fence.

. . . .

Charlie Quarles and Walker maintained the recognized boundary fence, indicated by the letter "A" on the McAdoo survey, by Quarles doing the labor and Walker furnishing the fencing material.

Charles Quarles acknowledged that nothing had changed about the recognized boundary line fences since he started leasing Plaintiffs['] predecessors in title property in 1992[.]

Charles Quarles acknowledges that the disputed [property] . . . has been occupied by Walker since his knowledge of the property in 1992[.]

Charles Quarles was aware that since he started leasing the Plaintiffs['] predecessors in title property in 1992 that Walker claimed all the property on the west side of the fence shown by letter "A"[.]

. . . .

Not until after the McAdoo survey dated November 9, 2005 was any question raised with the Fayette County Tax Assessor regarding a disputed boundary line.

Defendant, Barbara Atkins Smith, Plaintiffs['] predecessor in title, provided a Plat she had found in the paperwork of her[] [a]unt[,] Francis Early, Ms. Smith's predecessors in title.

The plat . . . was prepared F.W. Carter, a surveyor from Brownsville, TN in July 1958 and the boundary line shown regarding the disputed portion of the

property is consistent with Walker's boundary claim and also consistent with the historical tax assessor maps.

The United States Department of Agricultural Farm Services historic aerial photographs since 1971 reflect[] boundary lines consistent with Walker's claim to the disputed property.

The Plaintiffs nor their predecessors in title have possessed, occupied or claimed or attempted to possess [or] occupy any portion of the disputed property from the time [of] Walker's possession in 1948 until this dispute arose sometime after the November 9, 2005 McAdoo survey.

Plaintiffs have no knowledge or information of anyone possessing the disputed property other than Walker.

Plaintiffs filed a "Response to Statement of Undisputed Material Facts" five months later, on September 25, 2008, the date of the summary judgment hearing, denying certain allegations of fact, but admitting that neither they, nor their predecessors in title, had "possessed, occupied or claimed or attempted to possess [or] occupy any portion of [the] disputed property from the time [of] Walker's possession in 1948 until this dispute arose sometime after the November 9, 2005 McAdoo Survey." They further admitted that they were without knowledge of anyone other than Walker possessing the disputed property. The trial court refused to consider Plaintiffs' response, finding it untimely.[4]

The trial court granted Defendant Walker's motion for summary judgment finding that "the disputed property has been openly, notoriously, adversely possessed, occupied and claimed by [Defendant Walker] since 1948 pursuant to a recognized fence line between [Defendant Walker] and Plaintiffs['] predecessors in title[, and] [t]hat [Defendant Walker] has acquired title to said disputed property by common law prescription." In granting summary judgment to Defendant Walker, the trial court noted that even if it had considered Plaintiffs' untimely filed responses, that summary judgment would have nonetheless been appropriate. Plaintiffs appeal the trial court's grant of summary judgment.[5]

---

[4] This finding is not challenged on appeal.

[5] The trial court's order granting summary judgment to Defendant Walker was made final pursuant to Tennessee Rule of Civil Procedure 54.02.

## II.  ISSUES PRESENTED

Appellants have timely filed their notice of appeal and present the following issue for review, summarized as follows:

1.     Whether the trial court erred in granting summary judgment to Defendant Walker.


## III.  STANDARD OF REVIEW

In the instant case, we are asked to review the trial court's grant of summary judgment. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Tenn. R. Civ. P. 56.04.  Ruling on a motion for summary judgment does not involve disputed issues of fact, but only questions of law.  *Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001).  Thus, our standard for reviewing a grant of summary judgment is *de novo* with no presumption of correctness as to the trial court's findings.  *See Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).  The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the non-moving party's favor.  *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000).


## IV.  DISCUSSION

### A.  *Adverse Possession*

The trial court's order granting summary judgment to Defendant Walker is somewhat unclear; however, it appears the grant was based on both a finding of common law adverse possession and a finding of common law prescription.[6]  As we stated above, the trial court refused to consider Plaintiffs' response to Defendant Walker's statement of undisputed material facts.  Plaintiffs do not challenge the trial court's action on appeal, and thus, we must now determine whether, under Defendant Walker's undisputed material facts, Defendant Walker was entitled to judgment as a matter of law.  *See generally Owens v.*

---

[6]We note that Defendant Walker's counter-claim cited only Tennessee Code Annotated section 28-2-103, which "may be utilized by the adverse holder only in the defense of a suit and not as a means to bar use by the rightful owner." *Cumulus*, 226 S.W.3d at 376 (citing *Kittel v. Steger*, 121 Tenn. 400, 117 S.W. 500, 503 (Tenn. 1909)).  Additionally, Plaintiffs frame the issue on appeal as whether Defendant Walker's conduct constitutes adverse possession such that summary judgment was appropriate.

*Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 775 (Tenn. Ct. App. 2001) (stating that the fact that the plaintiff's response to the defendant's statement of material facts was not filed until the day before the summary judgment hearing would have justified the trial court in disregarding the plaintiff's response "on that basis alone.") (citing Tenn. R. Civ. P. 56.03).

"The doctrine of adverse possession is often described as a limitation on the recovery of real property; the limitation period may operate not only as a bar to recover adversely possessed property but it may also vest the adverse holder with title." ***Cumulus Broad., Inc. v. Shim***, 226 S.W.3d 366, 375 (Tenn. 2007) (citing Ralph E. Boyer, *Survey of the Law of Property* 233, 236 (3d ed. 1981)). The policy rationales behind adverse possession are "(1) the stabilization of uncertain boundaries through the passage of time; (2) respect for the apparent ownership of the adverse possessor who transfers his interest; and (3) assurances of the long-term productivity of the land." ***Id.*** at 376.

"In our state, common law adverse possession rests upon the proposition 'that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed.'" ***Id.*** at 376-77 (quoting *Ferguson v. Prince*, 136 Tenn. 543, 190 S.W. 548, 552 (Tenn. 1916)). To establish common law adverse possession, as with a statutory adverse possession claim, "the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time." ***Id.*** at 377 (citing *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n.2 (Tenn. 1983)). Adverse possession is a question of fact, and the party claiming ownership by adverse possession bears the burden of proving the requisite elements by clear and convincing evidence. ***Id.*** (citing *Kirkman v. Brown*, 93 Tenn. 476, 27 S.W. 709, 710 (Tenn. 1894); *O'Brien v. Waggoner*, 20 Tenn. App. 145, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936)). "When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor." ***Id.*** (citing *Cooke v. Smith*, 721 S.W.2d 251, 255-56 (Tenn. Ct. App. 1986)).

On appeal, Plaintiffs argue that summary judgment was improperly granted to Defendant Walker because Defendant Walker only "occasionally" used the disputed property. Specifically, Plaintiffs contend that Defendant Walker's cutting of the timber on the wooded portion of the disputed property in 1997 was insufficient to constitute adverse possession as to the wooded portion, and that Defendant Walker's "naked assertion" that he "regularly maintained cows and/or grew hay on the property" without detailing "how often he cut hay and how much time he had cows on the land" did not establish adverse possession as to the open field portion of the disputed property. Plaintiffs cite to *Stoker v. Brown*, 583 S.W.2d 765, 767 (Tenn. 1979), wherein the Court stated that "[o]ccasional grazing and cultivation are insufficient to establish adverse possession[,]" as well as *Bone v. Loggins*, 652 S.W.2d 758, 760 (Tenn. Ct. App. 1982), in which this Court stated that "[t]he occasional use of land by cutting trees, no matter how long, will not *alone* constitute adverse possession."

(emphasis added) (citing *Coal & Iron Co. v. Coppinger*, 95 Tenn. 526, 530, 32 S.W. 465, 466 (1895); *Cusick v. Cutshaw*, 34 Tenn. App. 283, 292 237 S.W.2d 563, 567 (1948)).

Plaintiffs' argument overlooks one key detail: Defendant Walker's adverse possession claim is not based solely on his logging, farming, and cattle activities. As submitted in Defendant Walker's statement of undisputed material facts, the disputed property has been enclosed within Defendant Walker's recognized boundary fence line since 1948 and neither Plaintiffs nor their predecessors in title questioned Defendant Walker's possession of the disputed property for more than fifty years. In *Erck v. Church*, 87 Tenn. 575, 11 S.W. 794, 795-96 (Tenn. 1889), an adverse possessor, mistaken as to his property's boundary, built a fence fifty feet onto his neighbor's property. Our Supreme Court ultimately held that no adverse possession had occurred because the requisite time period had not been met; however, it recognized that such possession otherwise qualified as adverse. **Id.** at 794. "Typically, fencing is indicia of ownership." **Cumulus**, 226 S.W.3d at 377 (citing *Bensdorff v. Uihlein*, 132 Tenn. 193, 177 S.W. 481, 482 (Tenn. 1915)); *see also Wilson v. Price*, 195 S.W.3d 661, 667 (Tenn. Ct. App. 2005) ("[F]encing a property demonstrates a clear claim of ownership[.]").

It matters not that Defendant Walker seemingly did not realize that he was encroaching upon his neighbor's land. Our Supreme Court has recognized the "proper rule" regarding a mistaken boundary line as follows:

> [I]n the absence of positive proof or unambiguous circumstances showing that a possession is or is not adverse, the exclusive possession and use of the land are presumed to be adverse, *it is not necessary to show an intention to hold and claim the property in spite of the fact that the legal title may be in another.* The possession of one who holds property as his own is adverse to all the world, although he never heard of an adverse claim. . . . The fact that the occupant might, if he knew that he was on his neighbor's land, recognize and accede to the latter's title, does not affect the adverse character of his possession, where, *because there has never been any question or doubt as to the location of the boundary, he possesses and uses the property as his own,* and does not recognize or accede to any superior title.

*Id.* at 378 (quoting Annotation, *Possession in Ignorance of, or Under Mistake as to, Boundary Line as Adverse,* 80 A.L.R. 155, 157 (1932) (superceded by *Adverse Possession Due to Ignorance or Mistake as to Boundaries,* 97 A.L.R. 14 (1935)) (emphasis added)).

Because we find, based on Defendant Walker's statement of undisputed material facts, that the disputed property was enclosed within Defendant Walker's recognized boundary fence for a period of more than fifty years prior to the raising of any question regarding ownership, we affirm the trial court's finding of common law adverse possession. Accordingly, we need not consider whether the elements of common law prescription have been established.

## B. *Payment of Taxes*

Next, we consider Plaintiffs' argument that Defendant Walker is barred from claiming title to the disputed property by Tennessee Code Annotated section 28-2-110, which states:

> (a) Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.
>
> (b) This section shall not apply to persons under eighteen (18) years of age or to persons of unsound mind if suit shall be brought by them, or any one claiming through them, within three (3) years after the removal of such disability.
>
> (c) Nothing in this section shall bar a person from bringing an action to contest the lapse of a mineral interest within the period provided by § 66-5-108(f).

Plaintiffs maintain that they paid taxes on the disputed property, and thus, Defendant Walker is precluded from claiming title to such. Defendant Walker disputes Plaintiffs' allegation that they paid property taxes on the disputed property, and he further asserts that Plaintiffs may not now raise section 28-2-110 as an affirmative defense because it was not raised in their pleadings.[7]

We need not determine whether Plaintiffs waived Defendant Walker's alleged failure

---

[7]We note that Plaintiffs did cite to section 28-2-110 in their response to Defendant Walker's motion for summary judgment.

to pay property taxes as a defense, as we find the statute inapplicable to this case. "Tennessee Code Annotated section 28-2-110 was enacted in order to facilitate the collection of property taxes based upon property evaluations." *Cumulus*, 226 S.W.3d at 381. As our Supreme Court stated,

> Tennessee Code Annotated section 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes. To hold otherwise would effectively eliminate the adverse possession of any part of an adjoining tract.

*Id.* In this case, Plaintiffs acknowledge that each party paid the property taxes due on his or her respective undisputed property. Additionally, we find that the fourteen-acre disputed property is "relatively small" as compared to the over 150 acres of undisputed property owned by the parties. As evidence of its relatively small size, we note that it was not until the spring of 2005–approximately a year and a half after Plaintiffs purchased the property–that Mr. Quarles first suspected that his property did not include the seventy-eight acres he believed he purchased. Accordingly, we find that Tennessee Code Annotated section 28-2-110 does not act as a bar to Defendant Walker's claim to the disputed property. Because we have found that Defendant Walker has satisfied the requirements for common law adverse possession, and his claim is not barred by 28-2-110, we affirm the trial court's grant of summary judgment to Defendant Quarles. All remaining issues are pretermitted.

## V. CONCLUSION

For the aforementioned reasons, we affirm the trial court's grant of summary judgment to Defendant Walker. Costs of this appeal are taxed to Appellants, Melvin Quarles, Charlotte Quarles, Glen Hayden, and Cheryl Hayden, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.