# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 10, 2014 Session

## WALTER ALLEN GAULT v. JANO JANOYAN, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. 185155-3      Michael W. Moyers, Chancellor**

_____

### No. E2014-00218-COA-R3-CV-FILED-OCTOBER 30, 2014

_____

This case concerns a boundary line dispute. Walter Allen Gault ("Plaintiff") sued Jano Janoyan and Pinnacle Bank ("Defendants")[1] seeking a declaratory judgment that, by way of adverse possession, he is the rightful owner of a triangle-shaped piece of land, 41.59 feet at its base and approximately 302 feet on each of its two sides. The disputed area is within the deed boundaries of the property owned by Janoyan, the Plaintiff's next door neighbor. (See attached exhibit.) The parties' properties are in Forest View, a residential subdivision in Knoxville. Defendants filed an answer and a counterclaim for ejectment and quiet title to the property. Both parties moved for summary judgment. After a hearing, the trial court granted summary judgment to the Defendants. Plaintiff appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Terry G. Adams and Kevin J. Tonkin, Knoxville, Tennessee, for the appellant, Walter Allen Gault.

M. Edward Owens, Jr, Knoxville, Tennessee, for the appellee, Jano Janoyan and Pinnacle Bank.

### OPINION

_____

[1]The complaint also named Hugh M. Queener, Trustee, as a party defendant. Mr. Queener was subsequently dismissed from the suit by agreed order.

I.

Plaintiff has lived on his property continuously since 1970. In 1974, he acquired an ownership interest by way of a deed from his wife, and later owned full title when his wife passed away. In 1971, Plaintiff and his wife began planting trees along what Plaintiff refers to as "the Occupation Line," the line he claims as the boundary between the two lots by virtue of his alleged adverse possession of the disputed area. Seven trees and a bush remain. They have grown, and, according to Plaintiff, are of sentimental value to him.

Up until 2007, the lot now owned by Janoyan was undeveloped. In 2007, Janoyan's predecessor in interest constructed a home on the lot. In 2013, Janoyan purchased the property and has resided there with his family ever since. Pinnacle Bank holds two deeds of trust on the Janoyan lot. The disputed area is not enclosed. The instant dispute arose after Plaintiff learned that Janoyan intended to fence his property, including the disputed area. The disputed area is situated entirely within Lot 30, title to which is held by Janoyan. Plaintiff, however, claims ownership of the disputed area by virtue of adverse possession. In the alternative, he seeks a prescriptive easement for his exclusive use and enjoyment of the property.

The parties' lots are reflected in their respective deeds by metes and bounds descriptions as well as by reference to the subdivision plat that was recorded in 1955. The Gault lot, excluding the disputed area, is a .773 acre, rectangular tract. The Janoyan lot is a corner lot that is also generally rectangular but wider at the rear property line than at the front. Including the disputed area, the Janoyan lot consists of approximately 1.24 acres. The disputed area totals .144 acres.

An affidavit of the tax assessor reflects that property taxes on the Gault lot and the Janoyan lot have been assessed based on the recorded subdivision plat and deeds for some 38 and 42 years, respectively. The parties do not dispute that they have each paid their respective property taxes.

In April 2013, Plaintiff filed a complaint in which he alleged that he has held the disputed area "exclusively, actually, adversely, continuously, openly and notoriously" for more than forty-two years and thus owns the disputed area by virtue of adverse possession. In addition to planting trees, Plaintiff alleges that he had periodically mowed the grass along the "Occupation Line" and otherwise tended the property for over forty years. Plaintiff further alleges that he used the disputed area as a play area for his children and for a family garden. Plaintiff requested that the court establish the "true and correct" boundary line and find that title to the disputed area has vested in him. In the alternative, Plaintiff sought a prescriptive easement over the disputed area. Janoyan filed an answer in which he averred

that Plaintiff had no valid claim to the disputed area and was essentially trespassing with full knowledge that the property was not his. In his counterclaim, Janoyan sought to have Plaintiff ejected from his property and enjoined from further preventing Janoyan's use of his property.

In September 2013, Plaintiff moved for summary judgment on his claim of adverse possession. In his supporting affidavit, Plaintiff alleged that he believed the Occupation Line to be the boundary line between the two lots. In 1982, he built a patio in the disputed area and placed a swing upon it which has been replaced over the years due to weathering but the patio still remains. In addition, Plaintiff built a swing set for his children that was located in the disputed area and remained there until the mid-1980s. Plaintiff alleged that his family had buried some twelve dogs and other family pets in the disputed area, each marked by a readily identifiable headstone. Further, Plaintiff's son had constructed a remote control racetrack that he and other neighborhood children used during the 1980s and early 1990s. Also, in the 1970s, Plaintiff installed a drainpipe that carries water from his property into the disputed area; he made repairs to the drainage pipe as recently as 2013. Plaintiff further alleged that a previous owner of the Janoyan lot had placed stakes at the Occupation Line that Plaintiff considered as a "clear indication" of his property line. Further, according to Plaintiff, all previous owners of the Janoyan lot had maintained that property only to the Occupation Line. Plaintiff alleged that he discussed the boundary line with Janoyan's predecessor in interest, Mrs. Schultz, who confirmed in their discussion that she thought her property ended at the Occupation Line. Plaintiff alleged that since 2004, his grandchildren had used the disputed area as a play area the majority of weekends every month. Plaintiff claimed he never cared to enclose the disputed area because he felt it was not aesthetically pleasing and fencing it would be expensive. Plaintiff alleged that he had "used and exercised dominion over the land in the disputed area in a manner consistent with how yards are typically used in residential neighborhoods" – by maintaining the property and using it as a gathering place for family and friends – thus demonstrating ownership.

In November 2013, Defendants[2] moved the court to grant summary judgment in their favor and dismiss Plaintiff's claims of ownership to the disputed area. In his affidavit, Janoyan stated that it was not apparent to him, upon visiting the property before he purchased his lot, that anyone other than the title owner owned the entire lot. He disputed that the trees formed an obvious boundary line between the two lots. According to Janoyan, Plaintiff's "patio" is actually some flat flagstones upon which Plaintiff located a swing shortly after filing his complaint. At that time, Plaintiff also installed or manipulated a drain cap in the disputed area. Janoyan conceded that water drains from Plaintiff's property into the disputed

_____

[2] The motion was filed by Defendant Pinnacle Bank and adopted by Defendant Janoyan in its entirety.

area. According to Janoyan, there are only four pet "headstones" located along the boundary line and no visible bike track ruts in the disputed area. Janoyan concluded that,

> the proof shows that Plaintiff has not enclosed the property; that the uses asserted by Plaintiff do not support a claim of adverse possession; that the proof shows that Plaintiff has not paid taxes on the disputed property for over twenty years, and Plaintiff's claim is therefore barred by Tenn. Code Ann. § 28-2-110; and the proof shows that Plaintiff is not entitled to a prescriptive easement.

After a hearing, the trial court entered summary judgment in favor of Defendants. The court found that Plaintiff's claims were barred by the application of section 28-2-110 and dismissed the action with prejudice. Plaintiff filed a timely notice of appeal.

## II.

As taken verbatim from his brief, Plaintiff raises the issue of "whether the Trial Court erred in granting summary judgment in favor of the Defendants . . . and dismissing all of Plaintiff['s] . . . claims with prejudice based solely upon the provisions of Tenn. Code Ann. § 28-2-110."

## III.

This Court has stated the standard of review applicable to motions for summary judgment as follows:

> Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone. They are not, however, appropriate when genuine disputes regarding material facts exist. Thus, a summary judgment should be granted when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law.
>
> The party seeking a summary judgment bears the burden of demonstrating that no genuine dispute of material fact exists and that it is entitled to a judgment as a matter of law. When the moving party is the defendant, it is entitled to a judgment as a

matter of law only when it affirmatively negates an essential element of the non-moving party's claim or establishes an affirmative defense that conclusively defeats the non-moving party's claim.

*Brigadoon Ptnrs, LLC v. Hughes*, No. E2007-00267-COA-R3-CV, 2008 WL 538990 at * 2 (Tenn. Ct. App. E.S., filed Feb. 27, 2008)(citations omitted).

## IV.

Plaintiff asserts that the trial court erred in granting summary judgment to Defendants. He argues that the trial court improperly interpreted and applied Tenn. Code Ann. § 28-2-110 to dismiss his alternative claims of adverse possession and prescriptive easement.

Simply stated, the doctrine of adverse possession provides that "[w]hen an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor." *Cooke v. Smith*, 721 S.W.2d 251, 255-56 (Tenn. Ct. App. 1986)). "The underlying idea of the doctrine of adverse possession is 'that the possession should be maintained in an open and notorious manner, so as to warn the true owner that a hostile claim is being asserted to his land.' " *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005)(quoting *Bensdorff v. Uihlein*, 132 Tenn. 193, 177 S.W. 481, 483(Tenn. 1915)). On the other hand, Tenn. Code Ann. § 28-2-110 was enacted "to facilitate the collection of property taxes by requiring persons claiming an interest in real property to have that interest assessed and to pay the taxes thereon." *Cumulus Broadcasting, Inc. v. Shim*, 226 S.W.3d 366, 381 (Tenn. 2007)(citing *Burress v. Woodward*, 665 S.W.2d 707, 709 (Tenn. 1984)). To that end, section 28-2-110(a) provides as follows:

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

The trial court held as follows:

> [T]he Court finds that it is undisputed that for more than twenty years Plaintiff has not paid taxes on the disputed area of property that is the subject of this action, and that, therefore, Plaintiff's claims to any legal or equitable interest in the disputed property are barred by Tenn. Code Ann. § 28-2-110(a).

Pointing to ***Cumulus***, Plaintiff asserts that the Supreme Court has carved out an exception that permits his adverse possession claim to proceed forward despite his admitted nonpayment of property taxes on the disputed area. In ***Cumulus***, the High Court held as follows:

> Tennessee Code Annotated section 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes. To hold otherwise would effectively eliminate the adverse possession of any part of an adjoining tract. As a matter of policy, possession of property for twenty or more years, accompanied by all other elements of the doctrine, is a basis for ownership.

226 S.W.3d at 376-77.

In the present case, there is no apparent dispute that the parties' lots are contiguous or that they have each paid their respective property taxes. Accordingly, the issue boils down to whether a "relatively small" area is at issue. Plaintiff acknowledges that the term is not specifically defined in ***Cumulus***. He takes the position that because the disputed area makes up only 7 percent of the total land area owned by both parties, it thereby qualifies as "relatively small" so that section 28-2-110(a) does not bar his claim.

Our review of the survey obtained by Plaintiff as well as the recorded subdivision plat certainly puts the disputed area into perspective. We are dealing here with two lots – less than 2 acres in all – in a platted residential neighborhood. In our view, the lots themselves may be described as "relatively small." As earlier described, Plaintiff's lot is roughly three-fourths of an acre, while the Janoyan lot is approximately one and a quarter acres. At its widest point, at the rear lot line, the disputed area is over forty-one feet wide. Excluding the disputed area would effectively reduce the rear line of the Janoyan lot from 202 feet to 160 feet, while correspondingly increasing Plaintiff's rear lot line from 110 feet to 152 feet. Or, as Janoyan sees it, the overall size of his lot will decrease by over eleven percent, while Plaintiff's lot size will increase by nearly twenty percent. Janoyan concludes: "Percentage

formulas are meaningless in a case like this[,] [and] the disputed area is not 'relatively small' in any sense of the word." Under the facts before us, we agree. Accordingly, the exception created in *Cumulus* does not apply to prevent application of the statutory bar to Plaintiff's claim of adverse possession.

At this juncture, we briefly discuss Plaintiff's alternative claim that he is entitled to a prescriptive easement over the disputed area. Again, *Cumulus* is instructive. Therein, the High Court discussed prescriptive easements as follows:

> A doctrine related to adverse possession is that of prescriptive easement[. . . .]. Generally, this easement arises when a use, as distinguished from possession, is adverse rather than permissive, open and notorious, continuous and without interruption, and for the requisite period of prescription. The extent of the rights matured by prescription is based upon the extent of the use during the period of prescription.
>
> Most authorities describe the doctrine of adverse possession and that of prescriptive easement as "blended" but with differing histories; the primary distinction is that the adverse possessor occupied the land of another, whereas, in prescription, there is merely adverse use of the land of another. A prescriptive easement is not ownership and the right acquired is limited to the specific use.
>
> In order to establish prescriptive easement under the common law of this state, the usage must be adverse, under claim of right, continuous, uninterrupted, open, visible, exclusive, and with the knowledge and acquiescence of the owner of the servient tenement, and must continue for the full prescriptive period. The requisite period of time of continuous use and enjoyment for a prescriptive easement is twenty years.

*Id*. at 378-79.

Again, in his complaint, Plaintiff generally alleges that he has used the disputed area as land for his family garden and as a play area for his children. With little more elaboration, Plaintiff claims that as a result of his adverse "possession" of the disputed area for over forty-two years, he is "entitled to a Prescriptive Easement over the land . . . for his exclusive use and enjoyment." In this manner, Plaintiff does not seek simply the right to cross over the

-7-

Janoyan lot for any certain purpose or continued use, but sole possession of the entirety of the disputed area. Janoyan characterizes Plaintiff's easement claim as nothing more than "an adverse possession claim in disguise." We agree. As a result, we conclude that Plaintiff's prescriptive easement claim is essentially the same adverse possession with a new name. It is likewise barred.

Based on the foregoing, the trial court correctly held that "Plaintiff's claims to any legal or equitable interest in the disputed property are barred by Tenn. Code Ann. § 28-2-110(a)." The trial court properly granted summary judgment in favor of Defendants as a matter of law. We reject Plaintiff's arguments to the contrary.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Walter Allen Gault. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE