# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### July 24, 2015 Session

## WAYNE HOLTSCLAW ET AL. v. DARRELL JOHNSON ET AL.

**Appeal from the Chancery Court for Carter County**
**No. 28411     John C. Rambo, Chancellor**

---

### No. E2015-00081-COA-R3-CV-FILED-SEPTEMBER 28, 2015

---

This is a dispute over a narrow strip of real property adjacent to the boundary line of tracts of land owned by plaintiffs Wayne Holtsclaw and Willie Holtsclaw and defendants Darrell Johnson and Brenda Johnson. The Holtsclaws brought this action seeking ejectment and a declaration that they owned the disputed property. The Johnsons asserted, among other things, that they were entitled to the property because of their many years of adverse possession. The Holtsclaws responded by arguing that Tenn. Code Ann. § 28-2-110 (2000 & Supp. 2015) bars the Johnsons' adverse possession claim because, for more than twenty years, the Johnsons had not paid property taxes on the disputed property. The Johnsons responded that the Supreme Court's opinion in ***Cumulus Broadcasting, Inc. v. Shim***, 226 S.W.3d 366, 381 (Tenn. 2007), which held that § 28-2-110 is not applicable "when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes," applied in this case. The trial court ruled that the Johnsons established ownership by adverse possession and that the "***Cumulus*** exception" applies. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Christopher D. Owens, Johnson City, Tennessee, for the appellants, Wayne Holtsclaw and Willie Holtsclaw.

Arthur M. Fowler and Arthur M. Fowler, III, Johnson City, Tennessee, for the appellees, Darrell Johnson and Brenda Johnson.

1

**OPINION**

**I.**

The Holtsclaws own a parcel of real estate approximately thirteen acres in size in Carter County.  The Johnsons own a tract of about eleven acres to the northwest of the Holtsclaws.  The boundary line, although disputed at trial, was held by the trial court to be state Highway 143.  The Doe River runs generally parallel to and just south of Highway 143.  The disputed property is a strip of land, roughly one and a half acres, that lies between Highway 143 and the Doe River.  The Johnsons claim that the boundary line was marked by the Doe River.  Alternatively, they claimed, as an affirmative defense, that they and their predecessors in title had adversely possessed the disputed property since 1940, and thus were entitled to it by operation of the common law doctrine of adverse possession.  At trial, a tax map with markers showing the general location of the parties' properties and pertinent landmarks was introduced as Exhibit 29.  As a visual aid, we have reproduced Trial Exhibit 29 exactly as proffered and entered into evidence below:[1]

---

[1] The only difference between this reproduction and the original Exhibit 29 is that the latter had certain boundary lines in color and the disputed property was highlighted in yellow.



**Holtsclaw, et al. v. Johnson**
**Carter County Chancery Court No.: 28411**

After a non-jury trial, the trial court made extensive findings of fact, none of which have been challenged by either party on appeal. Accordingly, we extensively cite the court's memorandum opinion:

> Mr. Holtsclaw asserts that, not only does his property go to the south bank of Doe River, it incorporates Doe River and it goes all the way to the state right-of-way for Highway 143.
>
> Now, the Johnsons are on the other side of Highway 143. That is their main tract of property. In response, they assert that the Johnson family . . . has had this property since 1940.
>
> Returning to what the Johnson family believe they own, of course, there's no dispute that they owned all the way to Highway 143, but they assert that their deeds bring them across Highway 143 into the disputed property which lies south of 143 and north of the banks of [the] Doe River. The

3

acreage there, based on what the surveyors have told us, is more or less an acre and a half.

\* \* \*

The Court finds that the chain of title, the deeds, show that the disputed property, by way of deed, is Holtsclaw property.

\* \* \*

The Court finds that this case has to be decided based on whether the Johnsons have adversely possessed the property.

Now, they certainly believe, and the Court finds, that . . . the whole Johnson family, thought they owned this property to the Doe River and they thought that their 1940 deed gave it to them.

\* \* \*

What is material is really the 20-year period, under the common law, adverse possession prior to 2011, 1981 forward. . . . The property, before Mr. Johnson made any effort in it, was basically swamp-like. The level of the property was at or near the river. It would flood frequently and it was significantly below the grade of the road. It was of no valuable purpose to anyone except when the river left its banks it would wash out.

\* \* \*

The Court finds the following facts: Mr. Darrell Johnson, since at least 1980 – and again, this is a fact that the Court believes has been proven by clear and convincing evidence, that since at least 1980, he has set about for a long period of time, up to and through at least 2006, on a process of taking essentially a worthless piece of property for any productive use, except at one point a small portion of it was suitable for a sawmill structure and then the storage of some logs and some sawdust below the grade and also subject to the potential of being washed out by the Doe River.

4

Mr. Johnson went about a process of filling that swamp area, that low grade. It was not a minor project, it was a significant, ongoing, open and notorious effort by him. At least three to four hundred loads, dumptruck loads, of fill were placed in this property. The Holtsclaws knew that. They are long-time residents of Roan Mountain and they had been by this property hundreds, if not thousands, of times over the years and certainly scores upon scores during the period when the fill was occurring.

What was their reaction to that? That is telling. They knew, just like every other contractor in Roan Mountain, Newland, and the area that had fill, that Mr. Johnson was the man to go to to place fill in that area. That was community-known knowledge. And these people, none of them ever went to Mr. or Mrs. Holtsclaw and sought out and received permission.

Now, they did go to Mr. Johnson and Mr. Johnson never said, "Well, you need to go see the Holtsclaws, that's not me;" he held it out as his property. The evidence that he was holding it out as his property was he was granting permission left and right to different people to dump their fill there. He was hiring people in the community, friends, neighbors, co-workers to move the dirt on that. He did it.

Now, if the Holtsclaws truly believed that this was their property, they certainly never brought it up to Mr. Johnson; and they had reason to do so.

*     *     *

Now, there was no sawmill operation in the 20 years prior to 2011. There were vehicles, not just someone parking their car, a residential car or pulling off on the side of the road; it was a continuous location for bulldozers, dumptrucks, heavy pieces of equipment that are of value; and they were there, the Court so finds, essentially all the time. Everybody in Roan Mountain knew that those were the Johnson vehicles, even one vehicle had his name on it. No one questioned whether that was Johnson vehicles and certainly the Holtsclaws didn't

5

question if that was Johnson equipment.  This was kind of a base of operations in the disputed property for the Johnsons.  They had folks that are mechanics that worked for them.  One of the witnesses, he did maintenance and mechanical work, worked on these trucks, right there within the disputed property.

Now, was the fill that was going on [an] operation, where they come in and move 500 loads of dirt within a month and then fix it up and leave?  No, this was something that went on for well over 20 years but it was obvious to anybody that drove by that this was going on and it was obvious to Mr. and Mrs. Holtsclaw.

\*    \*    \*

Now, what does all that mean, especially when you talk about who was paying the taxes on it?  The Johnson family believed they owned this property because of their deed from 1940.  They're not attorneys, and they were wrong in their belief, but they were not wrong in their integrity, or believing the truthfulness, that this was their property.  They had some language that they hung their hat on; they just made a mistake.  But they thought it was their property.

This gave them no reason to go down to the assessor of property and look at tax maps.  This is not a piece of property on down the road that they've been using and they didn't pay their taxes on it.  They had no reason to believe that they were using a separate tract of property that carries its own separate taxes that need to be paid.

The tax records, of course, are imprecise.  Even in this case we learned from the Assessor of Property that he had to modify the acreage on the applicable parcels from time to time simply because the acreage amounts were wrong.  So neither Mr. Holtsclaw [n]or the Johnson family were relying on the tax cards to determine where their property was.  The Johnsons thought they were paying taxes on it and the Holtsclaws thought that they were paying taxes on it.

6

This is simply not a situation where a piece of property was being used and the person who was using it had no intention of fulfilling their citizen's duty to pay their real property taxes. That's why we have [Tenn. Code Ann. § 28-2-110] that you have to pay the taxes or you can't claim adverse possession. You don't get to use it free of charge and not pay your taxes. They thought they were paying their taxes on a small piece of the overall tract that they owned. These are two competing tracts that are essentially adjacent. There are state highways, county roads, right-of-ways that split parcels in Carter County and probably every county in the State of Tennessee. That is not helpful in deciding this case, the fact that there is a state road that traverses the property.

\*        \*        \*

The Court finds that Mr. Johnson's testimony is credible and is true. The property is improved. There's three to four hundred loads. That's an expensive process, to fill. It was swamp property and now – it was swamp property at river level; now it is road frontage at road level.

There was no boundary dispute in this case. Both property owners, certainly the Johnsons, believed that they owned it. This is not a case where there was an adversarial relationship, but an adversarial relationship is not required for advers[e] possession. It just means that Mr. Johnson and his father held this property out to everybody in Roan Mountain that it was theirs, to the exclusion of others. It was open and notorious. Everybody knew whose equipment was on that property. Everybody knew that it was the Johnsons or their agents, their employees, that was moving dirt and filling the dirt, and they were doing this at least since 1980, and they were certainly claiming it against the world since 1940.

\*        \*        \*

Now, the Johnsons' mistake in their reliance on their deeds, a mistake that they've had since 1940, does not make their possession something other than adverse. It was still adverse. That does not control. This property was used by the

7

Johnsons, and the Holtsclaws had constructive knowledge of it the entire time it was being filled because what they were doing was open and notorious. All you had to do was go to the Roan Mountain State Park and the people who traversed that highway, they knew it. And if all of them knew it, the Court finds that the Holtsclaws had to have known it, too, because it was so open and notorious that presumption is established clearly and convincingly to the Court.

They have possessed it exclusively, no one else was using this property, continuously, the moving was for years, the equipment, it was there for over – almost 30 years if not longer[.]

So the Court finds that by common law adverse possession that the Johnsons have proven clearly and convincingly that they have used this property to the exclusion of all others. The Holtsclaws were never even on the property since 1980; there was no proof or evidence of that that convinced the Court otherwise.

The Johnsons have adversely possessed all of that property that is to the north of the north bank of the Doe River to Highway 143, which is approximately 600 feet more or less.

The Holtsclaws filed a motion to alter or amend, arguing that (1) it was undisputed that the Johnsons had not paid taxes on the disputed property for more than 20 years; (2) "the *Cumulus* exception to T.C.A. § 28-2-110 does not apply to the specific facts in this case because the disputed property does not qualify as a 'slight overlap' and because the disputed property was a separately conveyed tract of land;" and (3) therefore the Johnsons should be barred from asserting a claim of title by adverse possession. The trial court denied the motion, saying:

*Cumulus* stands for the proposition that 28-2-110 is not a complete bar. As the Supreme Court stated in *Cumulus*, Tennessee Code Annotated Section 28-2-110, "should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owner that is making claim of ownership has paid his respective real estate taxes. To hold otherwise would effectively eliminate that adverse possession of any part of an

8

adjoining tract." . . . [T]his one and a half acres, which was the property in dispute, constituted a relatively small area of the undisputed property. Essentially it's somewhere between three and a half to five percent of the overall property between the two adjacent tracts. . . . The Court found that the properties were adjacent. The parties had stipulated they had paid their respective real property taxes.

Now the issue is even more focused as it has been raised in the Motion to Alter or Amend or set aside [t]he Court's Judgment. [The Holtsclaws' argument] is that the disputed property, based on the time of acquisition in 1963 was a separate tract, and that it should stand on its own. It is separate from the adjacent Holtsclaw property and the adjacent Johnson property. . . .[A]s [t]he Court has previously held, by [d]eed this middle tract of one and a half acres, by [d]eed, was Holtsclaw property. . . . *Cumulus* and subsequent cases have yet to hold that adjacent property is considered separate tracts if they were acquired at different times. Prior to the beginning of adverse possession by Johnson, all the Holtsclaw property had been acquired. The . . . assessment by Carter County did not assess at any time for three tracts. They assessed for two tracts. . . . So the public records indicate that this, as far as Carter County is concerned, they taxed not three but two tracts of property regardless of the date of acquisition of the Holtsclaws. So all of the Holtsclaw property in Carter County, for tax purposes, of which 28-2-110 is designed to make sure that these taxes are collected, includes all Holtsclaw property together regardless of when it was acquired . . . . [W]hen the adverse possession began the records of Carter County were that these were two tracts that were contiguous. And if they are, and [t]he Court so finds that they were two contiguous tracts, this acre and a half was a relatively small area of those two tracts, somewhere between three and five percent. The parties had stipulated that both sides had paid their taxes on the two tracts. For tax purposes, and that is the purpose of 28-2-110, there was no third tract. Now, Carter County's tax records, not unlike other counties in upper East Tennessee and mountainous property, the acreage varies, the boundary lines are not always accurate on those tax cards and tax maps. But there

was never . . . three parcels and three tax cards. It was two properties regardless of when the Holtsclaws acquired their property. It was never treated as three and the acre and a half was never, in the public records, a separate tract. Therefore [t]he Court ultimately finds that [the] *Cumulus* exception for adverse possession when the properties are two tracts between neighbors involving a relatively small area with competing claims of ownership, and both respective real property taxes have been paid by the competing owners, 28-2-110 does not serve as a bar to eliminate the adverse possession claim of part of the adjoining tract.

The Holtsclaws timely filed a notice of appeal.

## II.

The issue on appeal is whether the trial court erred in holding that the exception to Tenn. Code Ann. § 28-2-110 recognized by the Supreme Court in *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 381 (Tenn. 2007), applies in this case, and therefore that the Johnsons established their claim of adverse possession of the disputed property.

## III.

"Our review of this judgment entered after a bench trial is *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact." *Heaton v. Steffen*, No. E2008-01564-COA-R3-CV, 2009 WL 2633050, at *5 (Tenn. Ct. App. E.S., filed Aug. 27, 2009) (citing Tenn. R. App. P. 13(d)). "A trial court's conclusions of law are subject to a de novo review with no presumption of correctness." *Dye v. Waldo*, No. E2012-01433-COA-R3-CV, 2013 WL 718780, at *4 (Tenn. Ct. App. E.S., filed Feb. 26, 2013).

## IV.

Regarding the common law doctrine of adverse possession, the Supreme Court in *Cumulus* set forth the pertinent governing principles, stating as follows:

> The doctrine of adverse possession is often described as a limitation on the recovery of real property; the limitation period may operate not only as a bar to recover adversely possessed property but it may also vest the adverse holder with title. Generally, acquisition by adverse possession for

10

the requisite period of time, whether statutory or under common law, must be (a) actual and exclusive; (b) open, visible, and notorious; (c) continuous and peaceable; and (d) hostile and adverse. The adverse possession of real estate is not only inconsistent with the right of the title holder but may, when all elements of the doctrine are present, create an actual ownership interest.

\* \* \*

In our state, common law adverse possession rests upon the proposition "that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed." Color (or assurance) of title is not required. In order to establish adverse possession under this theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. Adverse possession is, of course, a question of fact. The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing. The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor.

236 S.W.3d at 375, 375-77 (internal citations omitted).

In this case, the trial court recognized and correctly applied these principles. As already stated, the Holtsclaws have not challenged any of the trial court's factual findings. Consequently, the Johnsons have established the factual basis for their claim of common law adverse possession; namely, that their possession of the disputed property was exclusive, actual, adverse, continuous, open, and notorious for over twenty years, and further, that the Holtsclaws sat idly by while the Johnsons spent considerable effort and resources for thirty years to improve the disputed property from essentially useless swampland at river level to useable land at road level.

The issue presented here is one of law: whether Tenn. Code Ann. § 28-2-110 bars the Johnsons' adverse possession claim. That statute provides in pertinent part:

Any person having any claim to real estate . . . the same having been subject to assessment for state and county taxes, who . . . ha[s] failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty (20) years, shall be forever barred from bringing any action in law or in equity to recover the same[.]

Tenn. Code Ann. § 28-2-110.

In *Cumulus*, the Court set forth an exception to section 28-2-110, stating in pertinent part as follows:

Because tax maps are for the purpose of showing the plats upon which parties have paid taxes rather than establishing boundaries, a "slight overlap" would rarely have any effect on an evaluation for tax purposes. Tennessee Code Annotated section 28–2–110 was enacted in order to facilitate the collection of property taxes based upon property evaluations. . . . [S]ection 28–2–110 *should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes*. To hold otherwise would effectively eliminate the adverse possession of any part of an adjoining tract. As a matter of policy, possession of property for twenty or more years, accompanied by all other elements of the doctrine, is a basis for ownership.

236 S.W.3d at 381 (emphasis added; footnote and internal citation omitted).

Since *Cumulus* was decided in 2007, this Court has had several occasions to consider the applicability of the exception. In *Quarles v. Smith*, No. W2009-00514-COA-R3-CV, 2010 WL 653011, at *6 (Tenn. Ct. App. W.S., filed Feb. 24, 2010), we found that the adverse possessor established the three elements of the exception, (1) contiguous tracts, (2) "relatively small" disputed area, and (3) payment of taxes by the contestants on their respective tracts, stating that "we find that the fourteen-acre disputed property is 'relatively small' as compared to the over 150 acres of undisputed property owned by the parties." In *Sweeney v. Koehler*, No. E2009-02306-COA-R3-CV, 2010 WL 4962888, at *4 (Tenn. Ct. App. E.S., filed Dec. 10, 2010), we stated:

The Sweeneys dispute the trial court's finding that 4.26 acres amounts to "a relatively small area." Although the Supreme Court in *Cumulus* [did not] clarify what constitutes a "slight overlap" or a "relatively small area," Tennessee case law after the *Cumulus* decision has helped to define this factor. In *Quarles v. Smith*, for example, this court determined a 14–acre disputed property to be "relatively small" compared to the approximately 150 acres of undisputed property owned by the parties. The disputed area in *Quarles* constituted about 9.3 percent of the total land. The 4.26 acres disputed by the Sweeneys and Koehlers represents about 9.2 percent of their collective acreage. We therefore find that the evidence presented at trial does not preponderate against the trial court's finding that the disputed land at issue is relatively small.

(Internal citation omitted.)

This Court has also held the *Cumulus* exception inapplicable under certain circumstances, most often when we have concluded that the disputed area was not "relatively small." *See Gault v. Janoyan*, No. E2014-00218-COA-R3-CV, 2014 WL 5492747, at *4 (Tenn. Ct. App. E.S., filed Oct. 30, 2014) (finding disputed area not "relatively small" where the total acreage owned by both parties was "less than 2 acres in all – in a platted residential neighborhood"); *Dye*, 2013 WL 718780, at *5 (holding not a "slight overlap" where plaintiff asserting adverse possession "is claiming double the acreage assessed to her for tax purposes and contained in her deed"); *Cass Rye & Assoc. v. Coleman*, No. M2011-01738-COA-R3-CV, 2012 WL 4044862, at *8 (Tenn. Ct. App. M.S., filed Sept. 13, 2012) ("Unlike the dispute in *Cumulus Broadcasting*, the fifteen acre tract at issue in this case is not an area which overlaps two adjoining properties; it is a separately conveyed parcel distinctly assessed for tax purposes"); *Heaton*, 2009 WL 2633050, at *7 (distinguishing *Cumulus* where "[t]he Disputed area constitutes approximately ½ of the property the defendant claimed and a significant portion of the land the plaintiff claimed").

In the present case, the Holtsclaws do not argue that the trial court incorrectly found that the disputed area, about one and a half acres and "somewhere between three and a half to five percent of the overall property between the two adjacent tracts," was a relatively small overlap. They argue that because the disputed property was apparently once deeded to their predecessors in title as a "separate" tract, before the period of adverse possession began, *Cumulus* should not apply. We agree with the trial court's analysis of this issue, however. There was no showing that the disputed area was ever

treated as a separate and distinct tract for tax assessment purposes; on the tax maps entered into evidence, it was included as part of the Holtsclaws' tract. Nor did the trial court find any evidence that anyone considered the disputed property to be a separate and distinct tract, for tax purposes or otherwise, at any time pertinent to this appeal. The Johnsons mistakenly, but as the trial court found, in good faith, believed it was part of their tract; and the Holtsclaws, when they finally looked into title after many years of watching the Johnsons improve it, concluded that it was a part of their tract. The *Cumulus* "contiguous tract" element has thus been established under these circumstances.

Secondly, the Holtsclaws argue that, because the actual boundary line was determined to be state Highway 143, a readily identifiable landmark, *Cumulus* should not apply. They do not cite any authority for this proposed exception to the *Cumulus* rule, however, and this Court is generally disinclined to create such an exception to the principles clearly espoused in a Supreme Court opinion. The public right-of-way for a roadway does not render the Holtsclaw and Johnson tracts non-contiguous. As the trial court found, both the Holtsclaws and the Johnsons paid property taxes on their respective parcels, and both *thought* they were paying taxes on the disputed strip of property between Highway 143 and the Doe River. We affirm the trial court's ruling that because "the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes," *Cumulus*, 236 S.W.3d at 381, Tenn. Code Ann. § 28-2-110 does not apply.

V.

The judgment of the trial court that the Johnsons established their claim of adverse possession is affirmed. Costs on appeal are assessed to the appellants, Wayne Holtsclaw and Willie Holtsclaw. This case is remanded to the trial court for enforcement of its judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE

14