IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2019 Session

**JERRY LEE, ET AL. v. JANA SMITH, ET AL.**

**Appeal from the Chancery Court for Wilson County**
**No. 2017-CV-367    Charles K. Smith, Chancellor**

———————————————————

**No. M2018-01529-COA-R3-CV**

———————————————————

This is a dispute regarding the ownership of a gravel lane used to access a 95-acre tract of land; Plaintiffs appeal the trial court's dismissal of their suit to quiet title to the property or, alternatively, for a declaration that they acquired ownership of the road through adverse possession.  The trial court held that Tennessee Code Annotated section 28-2-110 barred Plaintiffs from pursuing their claim of ownership because there was no proof that they had paid taxes on the property at issue for twenty years, as required by the statute; finding no error, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Shawn J. McBrien, Lebanon, Tennessee, for the appellants, Jerry P. Lee and Linda C. Lee.

Byron M. Gill, Lebanon, Tennessee, for the appellees, Jana Smith, Myron L. Smith, and Joyce Callis Smith.

**OPINION**

**I. FACTUAL AND PROCEDURAL HISTORY**

In April 1974, Jerry P. and Linda C. Lee purchased a 95.15 acre tract of land located at 465 Powell Grove Road in Wilson County.  In addition to setting forth the metes and bounds of the parcel, the Lees' deed provides:

There is also included with this property another road or right-of-way leading northwardly and westwardly to the public road known as Powell's Grove Road, the same being bounded generally as follows:

North by McGee, Murphy and John A. Smith;
East by McGee;
South by Myron and Joyce Smith;
West by Public Road known as Powell's Grove Road.

The Lees describe the "road or right-of-way" mentioned in the deed, that is the only access to their property to and from Powell Grove Road, as a narrow, one-lane road that is bordered on both sides by a fence and trees as it leaves Powell Grove Road and turns southerly at the northwest corner of the property of Myron and Joyce Smith ("the Smiths") and extends to the Lees' property.[1]

The Smiths own a 148-acre tract of land which borders to the immediate west of the Lees' property; a portion of their land fronts on Powell Grove Road. In June 2017, the Smiths quitclaimed a 5.44-acre portion of their property that adjoins the portion of the one-lane road referenced in the Lees' deed that connects with Powell Grove Road to their daughter, Jana Smith.

On November 17, 2017, the Lees filed a petition in Wilson County Chancery Court, seeking a restraining order and permanent injunction against Jana Smith and her parents. The Lees alleged that, sometime in the summer of 2017, Jana Smith asked them for, and was refused, permission to use the one-lane road to access her property; and that, on November 16, the Lees discovered that the Smiths had used heavy equipment to begin removing the fence line and trees bordering the one-lane road that ran to Powell Grove Road. The Lees asserted that the Smiths had no ownership right to the road, and that the Lees' "chain of title clearly indicates that their property/driveway has [been] and is their property and no other person has ownership rights"; they asked the court to issue a restraining order "preventing the [Smiths] and their agents from [conducting] any work on the [Lees'] property," to quiet title to their property, or, alternatively, for a declaration that they had acquired all ownership rights to the road by adverse possession.

The court issued a temporary restraining order that day; after a hearing on December 12, the court dissolved the order, holding that the Lees had not shown that they "will suffer irreparable injury, loss or damage before a trial on the merits can be conducted." The Smiths answered the petition, generally denying the allegations and

---

[1] Appended to this opinion is Trial Exhibit 19, which is a rendering of how the various parcels of property discussed laid in relation to each other and to Powell Grove Road. The property in question is the thin strip of land identified by the number "7" immediately beneath it.

asserting, as an affirmative defense, that the Lees did not have an ownership interest in the road.

A hearing was held July 16, 17, and 18, 2018, at which nine witnesses testified, including Mr. Lee, three surveyors, and numerous neighbors, and thirty-one exhibits were entered into evidence. At the conclusion of the Lees' proof, the Smiths moved for involuntary dismissal of the case, which the court granted orally; the court thereafter entered an order memorializing the oral ruling. The trial court held:

> . . . Petitioners have failed to show that they ever paid property tax on the real property in dispute (which has been depicted as the gravel drive along the northern boundary of Respondents' real property as shown on the Boundary Survey of the Myron Smith Property, dated November 28, 2011, prepared by Crockett Surveying, of record at Plat Book 27, page 637, Register's Office for Wilson County, Tennessee) (hereinafter the "Smith Lane") and, pursuant to Tenn. Code Ann. § 28-2-110, Petitioners should be forever barred from bringing any action in law or in equity to recover the Smith Lane. Based on the above, the Court finds that all of Petitioners' claims related to any ownership, including, but not limited to, any claims for fee simple and/or adverse possession of the Smith Lane, should be dismissed with prejudice. The Court does find that the Petitioners have established a prescriptive easement over and across the Smith Lane.

The Lees appeal, raising the following issues for our review:

> 1.      [Whether] the Appellants carried the burden of proving that they should be the owners of the disputed property/driveway by adverse possession both statutorily and at common law.
> 2.      [Whether t]he Chancellor erred by finding that the Lees' assertion of ownership of the driveway by adverse possession was barred by T.C.A. § 28-2-110 for failure to pay taxes on the property.

## II. ANALYSIS

This case was resolved on a motion for involuntary dismissal, which is governed by Rule 41.02(2) of the Tennessee Rules of Civil Procedure; the rule reads:

> After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective

3

proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment.

"In cases involving a motion for involuntary dismissal, the trial court 'must impartially weigh and evaluate the evidence as it would after the presentation of all the evidence' and it must grant such a motion if the plaintiff has failed to make out a prima facie case." *Thurmon v. Sellers*, 62 S.W.3d 145, 152–53 (Tenn. Ct. App. 2001) (quoting *Smith v. Inman Realty Co.,* 846 S.W.2d 819, 822 (Tenn. Ct. App. 1992)).

The standard we apply in reviewing the trial court's ruling on a Rule 41.02 motion was set forth in *Wilson v. Monroe Cty.*:

> This court uses the familiar Tenn. R. App. P. 13(d) standard to review a trial court's disposition of a Tenn. R. Civ. P. 41.02(2) motion because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence. Thus, we must review the record on appeal de novo with a presumption that the trial court's findings are correct. We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case. We give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses.

411 S.W.3d 431, 439 (Tenn. Ct. App. 2013) (quoting *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002) (citations omitted)). For the evidence to preponderate against the trial court's factual finding, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 70–71 (Tenn. Ct. App. 2000).

The basis of the Smiths' Rule 41.02 motion was that this action was barred by Tennessee Code Annotated section 28-2-110(a), which bars all claims of ownership when a claimant has not paid taxes on property that is in dispute.[2] Tenn. Code Ann. § 28-2-

---

[2] Tennessee Code Annotated section 28-2-110(a) provides:

> Any person having any claim to real estate or land of any kind, or to any legal or equitable interest therein, the same having been subject to assessment for state and county taxes, who and those through whom such person claims have failed to have the same assessed and to pay any state and county taxes thereon for a period of more than twenty

110(a); *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 380 (Tenn. 2007). A party relying on Section 28-2-110(a) to defeat a claim must "clearly establish the failure to pay taxes by the other party." *Cumulus Broad.,* 226 S.W.3d at 381 (citing *Bone v. Loggins,* 652 S.W.2d 758, 761 (Tenn. Ct. App. 1982)). Since the statute was raised as a defense to the Lees' claim of ownership of the tract of land, we examine the record to see whether, at the time the Lees closed their proof, there was evidence that they had the property assessed and paid state and county taxes for more than 20 years.[3] This inquiry and our analysis are intertwined with the Lees' alternative contentions that they owned the lane outright and by adverse possession.

The evidence relating to the ownership of the disputed property and the Lees' payment of taxes thereon was introduced through surveys, tax maps, and testimony. Upon a thorough review of the documentary evidence and testimony, we conclude that the evidence does not preponderate against the trial court's findings.

Paul Crockett, a professional surveyor, testified regarding surveys of the lands in the immediate vicinity of the parties' properties, including: (1) a survey he prepared on November 18, 2011, of the Appellee Smith's property consisting of 148.29 acres, introduced as Exhibit 8, (2) a survey he prepared of a 32-acre tract to the immediate north of that property on July 30, 1991, introduced as Exhibit 11; (3) Exhibit 12, a survey of a 6.336 acre tract of land owned by John Smith, also to the north of the Appellee Smiths' property, which was performed by Raymond Binkley on September 2, 1999; (4) Exhibit 13, a survey of the Kensington subdivision, which adjoins the Appellee Smiths' property to the north and east, which was performed by Robert Spears on May 15, 2001; and (5) Exhibit 14, a survey of the Lee's property performed by George Watkins on January 23, 1974, showing a 95.15 acre rectangular plot, with no connecting road to the plot to or from Powell Grove Road depicted or included in that acreage. He also testified that Exhibits 11 and 12, depicting properties whose south boundaries adjoin the lane in question, described the road as a "private right of way" or "ingress-egress." In summary, Mr. Crockett opined that, while he "couldn't tell you who owns" the piece of the access road to the Lee's property that runs northward from their 95.15 acre tract (which is not at issue in this lawsuit), once the lane turned westerly to connect to Powell Grove Road, "the Smiths, in [his] professional opinion, own that driveway."

---

(20) years, shall be forever barred from bringing any action in law or in equity to recover the same, or to recover any rents or profits therefrom in any of the courts of this state.

[3] As noted in *Cumulus*, the burden was on the Smiths to establish that the Lees did not pay taxes on the disputed land. This they did through the testimony of Mr. Crockett showing the boundaries of both the Lee and Smith tracts, and from the testimony of Mr. Lee and tax payment records introduced through him.

The Lees' surveyor, Anthony Bollinger, testified that he prepared a "retracement survey" on July 2, 2018, which showed that the northern boundary of the Smith property ended a few feet south of the fence line (i.e., in the disputed lane itself) that Mr. Crockett had identified as the northern border of the Smith property, and that the area between what the Smiths claimed was their boundary and the boundary as he had determined was the lane owned by the Lees.

Mr. Lee testified that the survey introduced as Exhibit 14 had been commissioned in 1974 by the previous owner, that it "appears to be the boundaries" of his property, and that he had been paying taxes on the parcel. Exhibit 20, the County Trustee's record of the history of property tax payments, showed that the Lees were assessed taxes on 95.15 acres of land, the amount of acreage specified in Exhibit 14. Mr. Lee also testified that he had not requested that any taxes be assessed on the disputed property so he could pay them.[4]

The evidence does not preponderate against the trial court's determination that the Lees had not paid taxes on the disputed land; the record clearly shows that they paid taxes only on the 95.15 acres as it is plotted on the 1974 survey. For this reason, the court properly held that this action was barred by Tennessee Code Annotated section 28-2-110.

---

[4] Mr. Lee testified as follows with respect to the payment of taxes on the gravel lane:

Q. Based on your deed, you've been paying property taxes.
A. I think I have.
Q. And it's your understanding you've been paying on not only where the No. 2 is but also the driveway *[Note: the "No. 2" referred to is the 95.15 acre tract; see the Appendix]*.
A. Yeah.
Q. -- based on your deed.
A. Yeah. In '74 the previous owners of our farm in title were paying property taxes based on 90-plus or 90, more or less, acres. Ours is based on a survey that was done by Dr. Lester. It was increased to 95.15. And I thought, well, maybe it's taking in all of that. But I had always thought we paid property taxes on it. I never looked at a tax map until the last couple of months.

On cross examination, he was further questioned about his payment of property taxes and testified as follows:

Q. So, Mr. Lee, you've testified that, except for maybe a slight offset, the amount of taxes you've been paying is on 95.15 acres which matches your survey; correct?
A. That's what it shows here.
Q. And that is a self-contained 95 acres as shown on your survey; correct?
A. That's what it appears to be.
Q. Have you ever requested that any taxes be assessed so you could pay them on this disputed lane that you're claiming is yours?
A. I have not.

The record also does not support the Lees' argument that their "property and . . . driveway form almost all the eastern and northern boundary of the Smiths' farm," such that the disputed land would be contiguous to theirs and would, pursuant to the holding in *Cumulus Broadcasting, Inc. v. Shim*, allow the case to proceed. 226 S.W.3d at 381 ("Tennessee Code Annotated section 28-2-110 should not serve as a bar to a claim of adverse possession when the tracts are contiguous, a relatively small area is at issue, and the adjacent owners making claims of ownership have paid their respective real estate taxes."). Black's Law Dictionary defines "contiguous" as "touching at a point or along a boundary; adjoining." CONTIGUOUS, Black's Law Dictionary (11th ed. 2019). The surveys in the record make clear that the Lee's 95.15 acre tract does not include the gravel lane in question. As noted in Exhibit 19, appended hereto, the property at issue, identified as "7" is not contiguous to the Lees' property, identified as "2." Accordingly, *Cumulus* does not prevent section 28-2-110 from barring the Lees' claim of adverse possession.

## III. CONCLUSION

The holding that Tennessee Code Annotated section 28-2-110 bars the Lees' claims is supported by the evidence, and we affirm the judgment in all respects.

_____
RICHARD H. DINKINS, JUDGE

7

FILED

TRIAL EX #19 FILED _____ TO THE TESTIMONY OF

LANDIS SANDERS

EASTLAND

DEMOLISHED

DB3-000(2)(a), PART 190, FUNERAL DESIGN OF LANDIS & C. MARTIN

[FORMER C. L. MARTIN 11/2/2012]
[FORMER C. L. MARTIN 10/7/2012]
[FORMER HENDERSON/CH 3/5/1942]
[FORMER ESTATE L.L. 3/1/1922]
FTD 11/18/2011

THE HOUSE

PARSON AND JOYCE CAYLE SMITH — 1

SMITH HOUSE

GREEN DRIVEWAY

HOMER BERRYMAN WHITE—WILL 1/9/1992]
[FORMER J.B. McCLAIN 4/2/1992]
[FORMER A. C. WHITE 9/2/1982]
[FORMER OWEN WHITE & JACK P. WHITE 11/2/1974]
[FORMER OWEN WHITE 11/22/1942]
[FORMER JOYCE CAYLES, JAMES CAYLE AND JERRY CAYLE 3/5/1932]
MARION SMITH AND JOYCE CAYLE SMITH 1/5/1932

252.25 FT

SMITH HOUSE

CEMETERY

3 PARCELS

3 — ▶

4

GREEN 11/31/2021
[FORMER RICHARD W. GREEN 7/8/1989]
[FORMER HOWARD W. GREEN 7/28/1968]
[FORMER DARRELL L TOMLINSON 7/2/1958]
[FORMER C. C. MARTIN 1/6/12/3632]

N
W — E
S

5
GLEN A. GRAY
[FORMER C. C. MURPHY]
[FORMER R. L. TOMLINSON]
[FORMER E. W. WHITE]

6 [FORMERLEVIS WHITE]
JOHN SMITH

NEELY

POWELL GROVE ROAD